# Conyngham School District's Appeal.

1. By Act of May 8th 1854, school directors might assess a tax on the subjects taxable for state and county purposes " not exceeding the amount of county and state taxes authorized by law" for such purposes.   The Act of February 23d 1866, enacted that real estate should " be exempt from taxation for state purposes."   *Held*, that this did not exempt real estate from taxation for school purposes.

2. School assessments under the Act of 1854 are separate and independent, although based on county and state valuations.

March 18th 1875.   At Philadelphia.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Appeal from the Court of Common Pleas of *Columbia county :* In Equity: Of September Term 1874, No. 21.

On the 29th of August 1874, the Locust Mountain Coal and Iron Company filed a bill against John Curran and others, directors of the School District of Conyngham township, and Martin Purcell, collector of school taxes of the same district, setting

[Conyngham School District's Appeal.]

forth, amongst other things, that under the Act of May 8th 1854, sects. 29, 31 (Pamph. L. 617, 1 Br. Purd. 245, 246, pl. 63, 64), the county commissioners are required to furnish to the school boards a copy of the last adjusted valuation of the subjects and things made taxable for state and county purposes, and that the same subjects and things are made taxable for school purposes, and that the directors should annually levy and apportion the school tax, "not exceeding the amount of county and state taxes authorized by law on all objects * * * made or to be made taxable for state and county purposes;" that the amount of county taxes that can be assessed on real estate is limited to ten mills, and by the Act of February 23d 1866, sect. 4 (Pamph. L. 82), real estate is exempted from taxation for state purposes; that about the 1st of July 1874 the directors of Conyngham School District illegally assessed a school tax of thirteen mills on all real estate, &c., being ten mills on the county rate and three mills on the state rate, in the township of Conyngham, for the year 1874, and issued their warrant to Purcell to collect the tax; that the plaintiffs own real estate in that township assessed at $173,070, on which the tax at the rate of thirteen mills would be $2249.91.

The plaintiffs averred that they were not liable to pay the three mills which were assessed under the Act of 1854, which is changed by the Act of 1866; but they had been and were ready and willing to pay the ten mills.

The prayers were that the assessment of three mills be declared contrary to law; that the defendants be restrained from collecting the tax and the directors from assessing plaintiffs for more than ten mills for school purposes, and from issuing a warrant to collect any greater tax, and for general relief.

The defendants answered, admitting the levy of the tax of thirteen mills, but denying that such levy, &c., was without authority of law or that the Act of 1854 was changed by the Act of 1866.

Under the Act of May 15th 1841, sect. 7, Pamph. L. 394, the rate of county taxation was limited to ten mills on the dollar of the adjusted valuation; and under the Act of April 29th 1844, sect. 34, Pamph. L. 497, the rate of state taxation was limited to three mills on the dollar of the adjusted valuation (2 Br. Purd., pp. 1360, 1381, pl. 13, 148). This rate of taxation was in force at the passage of the Act of 1854; the Act of 1866 enacted that real estate should thereafter "be exempt from taxation for state purposes."

The court (Elwell, P. J.) ordered that a preliminary injunction issue, restraining the defendants from collecting more than ten mills on the dollar of the last adjusted valuation of plaintiffs' real estate.

The defendants appealed to the Supreme Court, and assigned the decree for error.

[Conyngham School District's Appeal.]

*J. G. Freese*, for appellants.—The Act of 1866 did not repeal the Act of 1854, and the rate of taxation is that fixed by the Act of 1854; both acts can stand together. The Act of 1866 was to repeal state tax, and could not operate for the repeal of school tax: Ellis *v.* Hall, 7 Harris 292. An act will not repeal another by implication unless they are entirely inconsistent: Street *v.* Commonwealth, 6 W. & S. 209; Egypt Street, 2 Grant 455; Shinn *v.* Commonwealth, 3 Id. 205; Brown *v.* Losee, 5 Hill 221; Dickinson *v.* Dickinson, 11 P. F. Smith 401; Somerset *v.* Stoystown Road, 24 Id. 61.

*R. F. Clarke* (with whom was *H. A. Marr*), for appellees, referred to and compared the several Acts of Assembly relating to the question.

Mr. Justice GORDON delivered the opinion of the court, March 29th 1875.

The Locust Mountain Coal Company, in its bill, in this case, sets forth, inter alia, that it is the owner of large tracts of coal lands in Conyngham township, Columbia county, upon which, for school purposes for the year 1874, the appellants illegally levied a tax of thirteen mills upon each dollar of the valuation thereof; whereas, by the Act of Assembly of 1854, they have authority to levy an amount not greater than that which the law authorizes to be levied for county purposes, to wit, ten mills. The court below adopted this view of the case, and granted a preliminary injunction to restrain the collection of the excess of said taxes over ten mills.

A careful examination of the Act of 1854 compels us to dissent from this conclusion. Section 29 of that act requires the county commissioners to furnish the president and secretary of the school board " with a correct copy of the last adjusted valuation of proper subjects and things made taxable in the same, for state and county purposes ; which said property, subjects and things, are hereby made taxable for school purposes, according to the provisions of this act."

This section furnishes to the board of directors, a schedule of those objects upon which they may assess their tax. Now, it matters not that certain articles, found in those assessment lists, are taxable only for state, and others only for county purposes, because *all* are made taxable for school purposes without distinction.

The act refers in general terms to subjects taxable for state and county purposes, in order that the valuations may be uniform, and that those made for the county commissioners may become valuations for the school assessments ; uniformity is thus obtained and expense avoided. Nevertheless, these school assessments are none the less separate and independent, because based on the county and state valuations.

[Conyngham School District's Appeal.]

Let us select for example three subjects: pleasure carriages, lands and horses; the first liable only to state, the second only to county taxes, and the third to both state and county taxes; all, however, are subject to school levies, and for such purposes, they form a separate and independent schedule, and the school officer is not bound to know for which of the above-named purposes they are taxable; it is enough that they are taxable for either. Thus, having the schedule, the next inquiry is, what amount may be levied thereon? The 31st section of the Act of 1854, furnishes the answer: "The board of directors * * * * shall proceed to levy and apportion said school tax, pursuant to this act, not exceeding the amount of state and county tax authorized by law, on all objects * * * made or to be made taxable for state and county purposes." Now, as the obvious grammatical structure of this section requires that the first clause be immediately connected with the last, and that the middle one be transferred or read parenthetically, we may arrange them thus: "Shall proceed to levy and apportion said school tax on all objects * * * made or to be made taxable for state and county purposes, not exceeding the amount of state and county taxes authorized by law."

We can hardly conceive of anything more definite than this language. The school director says: "I have now a lawful list of the subjects which I may tax, now what is the amount I may levy?" Answer: an amount not exceeding the amount, that is, the aggregate, the sum total of the state, *and, i. e.*, added to (for this conjunction implies addition) the county tax.

We are, therefore, to take the amount of the county tax authorized by law at the time when the school tax is assessed, now ten mills, and add thereto the amount of the state tax, in like manner authorized at the time of said assessment, now three mills, and their sum gives us the maximum rate for the school assessment.

According to the construction contended for by the appellee, the above rule would apply only to articles taxable for both state and county purposes, whilst another must be adopted for those taxable only for county, and a third for such as are taxable only for state purposes. Thus the tax on horses must be thirteen mills, upon lands ten, and upon watches and pleasure carriages three mills. The objection to this construction is, that it destroys both the uniformity and simplicity of a tax system, in which both these elements are important, and worse than all, it does not properly express the legislative will.

Again, if our construction of this enactment be not correct, how shall we interpret the 6th section of Act of April 11th, 1862, P. L. 472, which reads in this wise: "The school tax on all watches and pleasure carriages shall be at the same rate on the adjusted valuation thereof, as upon other property, taxable by rate, in the proper (school) district." Now, adopt the rule claimed by the

[Conyngham School District's Appeal.]

counsel for the plaintiff as the true one, and we may well ask what rate, and what "other property" are here meant? Shall we levy three, ten, or thirteen mills? For, according to his exposition, the "other property" is taxable at all these rates. Clearly the legislature of 1862 understood, as we do, that the Act of 1854 authorized but one uniform rate of assessment on all property made subject to school tax, and, with that understanding, its enactment is free from obscurity and within the comprehension of the most ordinary mind. We are, therefore, the more confirmed in the adoption of this exposition, because it accords with legislative interpretation, and because it exhibits a coherent, simple and uniform system.

The decree of the court below is therefore reversed at the costs of the appellees, and the preliminary injunction is dissolved and set aside.