(No. 25992.-

THE CENTRAL ILLINOIS PUBLIC SERVICE COMPANY *et al.* Appellees, *vs.* THE ILLINOIS NATURAL GAS COMPANY, Appellant.

*Opinion filed February 18, 1941.*

GLENN W. CLARK, and BROWN, HAY & STEPHENS, for appellant.

JOHN E. CASSIDY, Attorney General, and STEVENS & HERNDON, (HARRY R. BOOTH, and GEORGE H. O'BRIEN, of counsel,) for appellees.

Mr. JUSTICE FARTHING delivered the opinion of the court:

The Central Illinois Public Service Company filed with the Illinois Commerce Commission a petition for an order requiring the Illinois Natural Gas Company to furnish natural gas to it at wholesale. The gas company's defense was that it was engaged in interstate commerce and was under the exclusive jurisdiction of the Federal Power Commission and, therefore, the Illinois Commerce Commission lacked jurisdiction. The commission held against the gas company and granted the prayer of the petition. On appeal, the circuit court of Coles county affirmed this order and appellant has perfected a further appeal to this court.

The main question is whether the Illinois Natural Gas Company is engaged in interstate or intrastate commerce. The facts are not disputed. The Illinois Natural Gas Company is a wholly-owned subsidiary of the Panhandle Eastern Pipe Line Company, a Delaware corporation, hereafter called the Panhandle company. That company gathers natural gas in Texas and Kansas and transmits it through

its high pressure mains through several States, including Illinois. Its main runs in a general east and west direction through Illinois. The Illinois Natural Gas Company, hereafter called the Illinois Natural, owns certain lateral transmission lines and incidental equipment all of which are located in Illinois. Gas is delivered to it at the points where its laterial transmission lines intersect the high pressure main of the Panhandle company. Gas is furnished to the Illinois Natural pursuant to a contract between it and the Panhandle company approved by the Illinois Commerce Commission. When the gas enters the lateral transmission lines of Illinois Natural pressure is reduced for economical transportation and delivery. This company delivers the gas from its lateral lines to local public utility companies, which, in turn, distribute it to the general public. Before delivery to these local utilities the pressure is further reduced.

Appellant argues that although all the property owned by it is located entirely in Illinois and although it sells natural gas only to Illinois utilities, it nevertheless is engaged in interstate commerce and is not subject to the regulations of the Illinois Commerce Commission. In support of this position, it points out that in packing the high pressure transmission line from day to day with natural gas from the sources of supply, Panhandle estimates the quantities of natural gas that will be used by Illinois Natural and other companies purchasing from Panhandle, in Illinois and other States, and each day continuously transports sufficient gas to satisfy the requirements of all of these customers.

Several cases claimed by both sides to be more or less analogous to the one before us have been cited and discussed in the briefs. In *East Ohio Gas Co.* v. *Tax Commission,* 283 U. S. 465, 75 L. ed. 117, the East Ohio Gas Company was an Ohio corporation which furnished natural

gas to consumers in more than fifty municipalities in that State. It bought part of its gas from outside the State. At the State line the gas went into this company's high pressure transmission lines and these connected with distribution lines where less pressure was maintained. An Ohio statute taxed the gross receipts of corporations engaged in the business of supplying natural gas to consumers within the State. It was held the proceeds from the sale of gas bought outside the State were taxable under the statute and the contention that this was interstate commerce was overruled. The Supreme Court of the United States said: "The transportation of gas from wells outside Ohio by the lines of the producing companies to the State line and thence by means of appellant's high pressure transmission lines to their connection with its local systems is essentially national—not local—in character and is interstate commerce within as well as without that State. The mere fact that the title or the custody of the gas passes while it is en route from State to State is not determinative of the question whether interstate commerce ends." This statement is relied on by appellant. However, the court went on to hold in that case: "But when the gas passes from the distribution lines into the supply mains, it necessarily is relieved of nearly all the pressure put upon it at the stations of the producing companies, its volume thereby is expanded to many times what it was while in the high pressure interstate transmission lines, and it is divided into the many thousand relatively tiny streams that enter the small service lines connecting such mains with the pipes on the consumers' premises. So segregated the gas in such service lines and pipes remains in readiness or moves forward to serve as needed. The treatment and division of the large compressed volume of gas is like the breaking of an original package, after shipment in interstate commerce, in order that its contents may be treated, prepared

for sale and sold at retail." It is important to note in considering the instant case that it is not claimed appellant was engaged in intrastate commerce as far as its relations with the Panhandle company are concerned. Here, as in the *East Ohio Gas Co. case,* the claim is made that after the gas is in the lateral lines of Illinois Natural, its pressure reduced and ready for delivery to local utilities, it is no longer in interstate commerce.

In *Missouri* v. *Kansas Natural Gas Co.* 265 U. S. 298, 68 L. ed. 1027, it was held the transportation of gas through pipe lines from one State to another for sale to distributing companies is interstate commerce. That same proposition is laid down in *Public Utilities Com.* v. *Landon,* 249 U. S. 236, 63 L .ed. 577. But in that case the court held: "But in no proper sense can it be said under the facts here disclosed, that sale and delivery of gas to their customers at burner tips by the local companies operating under special franchises constituted any part of interstate commerce. The companies received supplies which had moved in such commerce, and then disposed thereof at retail in due course of their own local business." The court also stated that "Interstate commerce is a practical conception and what falls within it must be determined upon consideration of established facts and known commercial methods."

In *Public Utilities Com.* v. *Attleboro Steam & Electric Co.* 273 U. S. 83, 71 L. ed. 549, a Rhode Island company sold electricity to a Massachusetts firm and made delivery at the State line. It was held this was interstate commerce and the rates could not be regulated by the Rhode Island Public Service Commission. That, clearly, was an attempt to regulate interstate commerce and is not in point here.

In *Southern Natural Gas Corp.* v. *Alabama,* 301 U. S. 148, 81 L. ed. 970, the question presented was whether the imposition of a franchise tax upon the Southern Natural Gas Corporation was invalid as a direct burden upon inter-

state commerce. There the Southern company was engaged in the transmission of natural gas from Louisiana and Mississippi to various States. It had contracts for delivery of natural gas to four purchasers in Alabama. Three were intrastate utilities and the fourth a consumer. The gas was delivered in continuous movement from the gas fields without break or interruption to the point of delivery, viz., the meter house at which the gas so sold was measured for the purpose of payment. At this point pressure was reduced and the gas measured. The contracts with the utilities contained detailed provisions as to delivery, pressure, measurement, etc. The contract with the Tennessee company (the consumer) also provided the Southern company should maintain service lines to the different plants of the consumer. It was held the sale to this company was intrastate business. The court said there was no essential distinction between the establishment of such a local activity to meet the needs of consumers in industrial plants and the service to consumers in the municipalities which was found in the *East Ohio Gas Company case, supra*. The court also quoted with approval this language from *Missouri* v. *Kansas Natural Gas Co. supra:* "The business of supplying, on demand, local consumers is a local business, even though the gas be brought from another State and drawn for distribution directly from interstate mains; and this is so whether the local distribution be made by the transporting company or by independent distributing companies. In such case the local interest is paramount, and the interference with interstate commerce, if any, indirect and of minor importance."

We think clearly the local interest, in the case before us, is paramount and the national interest indirect and of minor importance. No attempt is made to regulate the transmission or delivery while the gas is in the high pressure lines, on its way through the State of Illinois or from

a point without to a point within Illinois. No such attempt is made until the gas has left the high pressure lines, its pressure reduced, and delivered to the wholly intrastate lines ready for delivery to local utilities. The question of what local utilities are entitled to be furnished with this gas is primarily one of local concern. Although the quantity of gas to be transmitted from the sources of supply will, of course, depend in part on the amount used in Illinois, that does not render the business of the distributing company in furnishing gas to local companies interstate in character.

In view of our holding that the order of the commission affects only intrastate commerce, the contention that the Natural Gas act (15 U. S. C. A. 717, *et seq.*) gives the Federal Power Commission exclusive jurisdiction of the matters involved in this proceeding must be overruled. The provisions of that act plainly show they apply only to interstate commerce, and that the act was not intended to disturb the States in the exercise of their jurisdiction over the sale and distribution of natural gas in intrastate commerce. Thus, section 1(b) of the act reads, in part: "The provisions of this chapter shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption * * * but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas."

The judgment of the circuit court is affirmed.

*Judgment affirmed.*