THATCHER v. TENNESSEE GAS TRANS-
MISSION CO.

No. 12946.

United States Court of Appeals
Fifth Circuit.

Feb. 27, 1950.

Rehearing Denied May 3, 1950.

Thos. W. Leigh, Monroe, La., for appellant.

Clyde R. Brown, Monroe, La., J. C. Hutcheson, III, Houston, Tex., for appellee.

Before WALLER, BORAH, and RUS-
SELL, Circuit Judges.

RUSSELL, Circuit Judge.

The primary question presented by this appeal is whether the provisions of Section 7(h) of the Natural Gas Act, as amended,[1] afford a constitutional basis for the expropriation of an easement and right-of-way for the construction of a gas pipe line across appellant's land by the appellee, a natural gas company, constructing such a pipe line under authority of a certificate of public convenience and necessity granted by the Federal Power Commission. Appellee, hereinafter called the gas company, instituted a proceeding in the United States District Court for the Western District of Louisiana to secure a right-of-way and easement which was contested by the appellant landowner, who urged by motion to dismiss that the apparent grant to the gas company of the right of eminent domain by the statute was ineffective because unconstitutional and therefore void in the respects stated and which as hereinafter set forth, are again urged here. Determination of the motion to dismiss was reserved by the trial Court until a hearing upon the merits, after which, for the reasons stated in an opinion published in 84 F.Supp. 344, and by judgment, that Court upheld the constitutionality of the Act and made a finding as to the amount due to be paid for the taking of the property and damages. The legal correctness of this judgment is challenged by this appeal.

Appellant vigorously insists that the amendment to the Act is unconstitutional for the reasons that it constitutes an engagement by Congress in interstate commerce rather than a regulation thereof, because as here applied the purpose for which the pipe line is to be constructed is not to "regulate commerce but simply to bring into existence a facility which, when completed, will be used for the purpose of transporting private property across State lines," and that for this purpose Congress itself could not exercise the power of eminent domain and therefore could not delegate such power to the gas company; and further, that the object of the exercise of the power of eminent domain sought to be granted by the amendment to the Act is the taking of private property for a private use, upon the assumption that the gas company is not a common carrier since it transports only its own gas; and further, that the power of eminent domain sought to be authorized by the Congress is the sole prerogative of the several States, reserved to them by the provisions of the Tenth Amendment to the Constitution. We are further advised that the ultimate issue involved is between private enterprise and governmental ownership since, as contended, if the power of eminent domain in question can be delegated by Congress to the gas company, Congress must of necessity be empowered to exercise it directly to attain similar ends and thus could then engage in interstate commerce in all of its particulars under the pretext of regulating it.

At the outset we express disagreement with the ultimate issue in the case as defined by appellant, and also with his implied statement that the decision herein could erect any effective barrier which

1. "When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: *Provided,* That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000." 15 U.S.C.A. § 717f (h).

might stop or delay the enlarging exercise by Congress of its power to regulate interstate commerce. As a Court we are called upon to determine only whether the legislative Act in question is constitutionally proper as a regulation of interstate commerce, the wisdom of the exercise of such power, if constitutional, being a matter committed solely to the legislative branch of the Government. Appellant's argument entirely overlooks this principle and therefore his conclusions are incorrect and without support in the law.

 There can be no quarrel with the statement that the transportation or movement of natural gas from the gas producing fields across state lines for interstate distribution and interstate sale in States far removed from the point of production, is interstate commerce. True, for many years, Congress did not see fit to employ its constitutional right to regulate such commerce. At the time of the passage of the Natural Gas Act in 1938, there were already in existence many companies engaged in the interstate transportation of this product, and some features of its distribution and sale were subject to the regulatory control of the respective States. The very provision of the Constitution now involved, however, could be and was a bar which prevented regulation by the States from being fully effective in a business which was experiencing a rapidly increasing growth in the transportation and consumption of natural gas for industrial, commercial and residential use.[2] In 1938, as evidenced by the Natural Gas Act of that year, Congress determined to exercise its power to regulate this interstate commerce to the extent as is in the statute set forth, supplemented by the amendments of 1942 and 1947.[3] The original Act represents no attempt to enlarge the classification or scope of interstate commerce, for the business of interstate transportation and interstate sales was of course indisputably interstate commerce, and in the Act the Congress therefore merely recognized the obvious and proceeded to regulate such commerce in accordance with its constitutionally possessed, but theretofore non-exercised powers. In the original Act, supra, "To regulate the transportation and sale of natural gas in interstate commerce," Congress found and declared "that the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest." The Act is purely regulatory, and provides statutory control of the engagement in and conduct of the business of companies subject to the Act, including control through the Federal Power Commission of rates and services, the right to require extension or improvement of their facilities, and forbidding the abandonment by such a company of all or any portion of its facilities except by the permission of the Commission. The Act, as especially strengthened by the amendment of 1942, supra, permitted no construction or extension of any facility, or the acquisition or operation of such facilities or extensions, with exception not now material, unless there was in force a certificate of public convenience and necessity issued by the Commission authorizing such acts or operation. These provisions, referred to because of their relevancy to the question now under consideration, among the many others set forth in the statutes,[4] evidence the regulatory scheme of Congress prior to the

2. Federal Power Commission v. East Ohio Gas Co., 70 S.Ct. 266, and cases cited page 271.

3. 52 Stat. 821, 56 Stat. 83, 61 Stat. 459, 15 U.S.C.A. § 717, et seq., Many of the provisions are referred to in Illinois Natural Gas Co. v. Central Illinois Public Service Co., 314 U.S. 498, 62 S.Ct. 384, 86 L.Ed. 371; Colorado Interstate Gas Co. v. Federal Power Comm., 324 U.S. 581, 595, 65 S.Ct. 829, 89 L.Ed. 1206; Colorado-Wyoming Gas Co. v. Federal Power Comm., 324 U.S. 626, 65 S.Ct. 850, 89 L.Ed. 1235; Interstate Natural Gas Co. v. Federal Power Comm., 331 U.S. 682, 67 S.Ct. 1482, 91 L.Ed. 1742.

4. See references in note 3, supra.

amendment of 1947, supra. Prior to the amendments of 1942 and 1947, the constitutionality of the Act as a valid exercise of the power to regulate interstate commerce, had been upheld.[5] Implicit in the provisions of the statute are the facts, among others, that vast reserves of natural gas are located in States of our nation distant from other States which have no similar supply, but do have a vital need of the product; and that the only way this natural gas can be feasibly transported from one State to another is by means of a pipe line. None of the means of transportation by water, land or air, to which mankind has successively become accustomed, suffices for the movement of natural gas. Consideration of the facts, and the legislative history, plan and scope of the Natural Gas Act, and the judicial consideration and application the Act has received, leaves us in no doubt that the grant by Congress of the power of eminent domain to a natural gas company, within the terms of the Act, and which in all of its operations is subject to the conditions and restrictions of the statute, is clearly within the constitutional power of Congress to regulate interstate Commerce. Indeed when Congress determined it in the public interest to regulate the interstate transportation and interstate sale of natural gas as provided by the Act of 1938 and the amendment of 1942, so that companies engaged in such business not only could not operate except under the authority provided by the statute, but could also be required to provide additions and extension of service, it was proper to make provision whereby the full statutory scheme of control and regulation could be made effective, by the grant to such company of the right of eminent domain. The possession of this right could well be considered necessary to insure ability to comply with the Commission requirements as well as with all phases of the statutory scheme of regulation.

There is no novelty in the proposition that Congress in furtherance of its power to regulate commerce may delegate the power of eminent domain to a corporation, which though a private one, is yet, because of the nature and utility of the business functions it discharges, a public utility, and consequently subject to regulation by the Sovereign. Luxton v. North River Bridge Co., 153 U.S. 525, 14 S.Ct. 891, 38 L.Ed. 808; Cherokee Nation v. Southern Kansas Railway Co., 135 U.S. 641, 10 S.Ct. 965, 971, 34 L.Ed. 295.[6] As said in the Cherokee Nation case, with reference to the railroad authorized to be constructed and maintained by the private corporation, the construction and operation of a natural gas pipe line under a certificate of public convenience and necessity, pursuant to a statute which subjects the interstate business to the restrictions and control provided by Congress as in the Natural Gas Act, has a direct relation to commerce among the States, and as was there held: "Other means might have been employed; but those designated in that act, although not indispensably necessary to accomplish the end in view, are appropriate and conducive to that end, and therefore within the power of congress to adopt. The question is no longer an open one as to whether a railroad is a public highway established primarily for the convenience of the people, and to subserve public ends, and therefore subject to governmental control and regulation. It is because it is a public highway, and subject to such control that the corporation by which it is constructed, and by which it is to be maintained, may be permitted, under legislative sanction, to appropriate private property for the purposes of a right of way upon making just compensation to the owner, in the mode prescribed by law." Counsel for appellant seeks to distinguish the Luxton and Cherokee Nation cases, supra, upon the ground that the corporations there

5. Federal Power Commission v. Natural Gas Pipeline Co., 315 U.S. 575, 62 S.Ct. 736, 86 L.Ed. 1037; Mississippi River Fuel Corp. v. Federal Power Commission, 8 Cir., 121 F.2d 159.

6. Oakland Club v. South Carolina Public Service Authority, 4 Cir., 110 F.2d 84.

authorized to exercise the power of eminent domain were common carriers whose services were available to each and all alike. This distinction, however, in no way detracts from the principle ruled in view of the kind of business and product here involved. This is, in fact and in law, as by the Natural Gas Act declared, a public business and subjected to public control as to its interstate features and, indeed, as to this it can not be conducted at all unless its operations are determined by the Federal Power Commission to be compatible with public convenience and necessity.

█ If our conclusions are sound, and we think there can be no valid doubt as to this, it must be deemed established that the grant of the power of eminent domain provided by the Natural Gas Act is a regulation of interstate commerce by Congress and not the equivalent of engagement in such commerce as contended by the appellant.

█ It follows from what we have said that the two subsidiary points of unconstitutionality urged, that the statute provides the taking of private property for a private use, and is an invasion of the rights reserved to the States, are not successfully maintained by the appellant.

██ The evidence as to the value of the land subjected to the right-of-way and easement and the consequent just compensation for the taking, as well as consequential damages resulting to other and adjacent property of the landowner, covered a wide range. The right-of-way and easement for two other pipe lines already constructed across the property had been obtained by private negotiations with the landowner. The line now in question was to be constructed only fifty feet from the nearest of those already in place. These are facts to be considered in determining the value of the interest in the realty additionally to be taken, as well as in connection with the testimony from the contradictory witnesses as to the extent of adjacent area subject to peril and thereby rendered unsafe for construction of buildings or other business or residential use in varying degree dependent upon the distance from the pipe line. The question of value and damage was for determination primarily by the trial Judge. We find no substantial basis for interference with his findings, and the judgment of the trial Court is affirmed.[7]

Affirmed.

7. In our consideration of this case, on appeal, it has developed that the provision of Subsection (h) of Section 7 of the Federal Natural Gas Act, 15 U.S.C.A., § 717f(h), according the holder of a certificate of public convenience and necessity the power of eminent domain, has been alleged to be violative of the Federal Constitution. That Act is one affecting the public interest, however, the lower Court failed to comply with Section 2403, Title 28 U.S.C.A., which requires the Court to certify such fact to the Attorney General and to afford an opportunity to the United States to intervene.

The Court below upheld the constitutionality of the Act. This Court, in conference, concluded that the decision of the lower Court should be affirmed.

In view of the fact that the lower Court has sustained the constitutionality of the Act and this Court is also of the opinion that the said Act is constitutional, there seems to be no practical purpose to be served in remanding the case to the Court below with directions to allow intervention by the United States, or in refraining from announcing our opinion until intervention is sought or declined by the United States, though consideration of the purpose of the statute would justify us in so doing. The statute should not be ignored and it is the duty of the trial Court to see that it is observed. We think, moreover, that it is our duty now to afford the United States an opportunity to intervene so that it may be a party to any review, or proceedings taken to secure review, in the Supreme Court of the United States.

The affirmance of the judgment in this case and the making of this order is also without prejudice to the right of the United States to apply for a rehearing within sixty days from this date should it determine that the public interest has

not been fully protected by the judgment entered and to be entered in this cause.

It is ordered that the Clerk of this Court promptly file with the Attorney General of the United States a certificate in conformity with said Section 2403 of Title 28 U.S.C.A. and that the entry of judgment and the mandate of this Court be withheld for a period of sixty days from the date of this opinion in order to allow the Attorney General opportunity to take such steps as he may deem advisable.

The Court has been advised the Government does not desire to intervene.