(Nos. 69853, 69856, 69857, 69865 cons.—

GENERAL MOTORS CORPORATION *et al.*, Appellees, v. THE ILLINOIS COMMERCE COMMISSION *et al.*, Appellants.

*Opinion filed June 4, 1991.*

BILANDIC and HEIPLE, JJ., took no part.

Edward P. O'Brien and David W. McGann, Special Assistant Attorneys General, of Chicago, for appellant Illinois Commerce Commission.

James Hinchliff, Thomas M. Patrick, Gerard T. Fox, Mark J. McGuire and William M. Lopez, of Chicago, for appellants Peoples Gas Light & Coke Co. *et al.*

Joseph H. Raybuck, of St. Louis, Missouri, for appellant Union Electric Co.

Defrees & Fiske, of Chicago (Edward J. Griffin, Clement F. Springer, Jr., and William D. Carstedt, of counsel), for appellants Interstate Power Co. *et al.*

Stephen J. Mattson, Michele Odorizzi and Christian F. Binnig, of Mayer, Brown & Platt, of Chicago, for appellants Northern Illinois Gas Co. *et al.*

Brent E. Gale, Robert P. Jared and Karen M. Huizenga, of Davenport, Iowa, for appellant Iowa-Illinois Gas & Electric Co.

Owen E. MacBride, Frederick J. Sperling, Rebecca J. Lauer and Carrie J. Hightman, of Schiff, Hardin & Waite, of Chicago, for appellant Illinois Power Co.

Daniel J. Kucera and Frank A. Mraz, of Chapman & Cutler, of Chicago, for appellant United Cities Gas Co.

David J. Rosso and Karl B. Anderson, of Jones, Day, Reavis & Pogue, of Chicago, for appellant Central Illinois Public Service Co.

Eric Bramlet, of Barnhard, Scriber & Koger, of Mt. Carmal, for appellant Mt. Carmel Public Utility Co.

Stephen J. Moore, Public Counsel, and Robert R. Neumann, Assistant Public Counsel, of Chicago, for appellee Office of Public Counsel.

Eric Robertson, of Lueders, Robertson & Konzen, of Granite City, for appellee Illinois Industrial Energy Consumers.

CHIEF JUSTICE MILLER delivered the opinion of the court:

This case involves the efforts of Illinois natural gas distribution companies (distributors) to pass through to their customers the "take-or-pay" costs which the Federal Energy Regulatory Commission (FERC) requires distributors to pay to help relieve interstate gas pipeline companies (pipelines) of the pipelines' take-or-pay obligations to gas producers. The pipelines' liability arose from long-term contracts formed between pipelines and natural gas producers before FERC allowed distributors to purchase gas directly from producers. The issue before this court is whether the Illinois Commerce Commission (ICC) must allow distributors to recover these costs in full from rate-payers, pursuant to the "filed rate doctrine." The filed rate doctrine is a rule of Federal preemption that requires States to give binding effect to rates filed with and approved by FERC.

Following an extensive investigation of the take-or-pay issue, the ICC determined that it was preempted from disallowing recovery of any portion of the FERC-approved costs. (*Re Costs Associated With Take-or-Pay Charges* (Ill. Com. Comm'n 1988), 95 Pub. Utilities Rep. 4th 5.) The Illinois Industrial Energy Consumers (Industrial Consumers) and the Office of Public Counsel (Public Counsel) appealed. With one justice dissenting, the appellate court reversed the ICC order. (191 Ill. App. 3d 450.) The distributors and the ICC appealed to this court. (See

134 Ill. 2d Rules 315(a), 317.) We allowed their petitions for leave to appeal, and we now reverse the judgment of the appellate court and reinstate the order of the ICC.

## Background

Until 1985, Illinois distributors purchased natural gas almost exclusively from interstate pipeline companies at FERC-approved rates. The pipelines in turn purchased gas supplies directly from gas producers pursuant to long-term contracts. During the natural gas shortage of the 1970s, virtually all contracts between pipelines and producers contained "take-or-pay" clauses, which required pipelines to purchase a certain amount of gas each year or pay for any gas not taken.

In 1985, FERC adopted an "open-access policy," which meant that, for the first time, a distributor could purchase gas directly from a producer and transport the gas over an interstate pipeline, without using the pipeline as a wholesaler. (See FERC Order No. 436 (Oct. 18, 1985), 50 Fed. Reg. 42408, 33 FERC Statutes and Regulations par. 61,007.) The new policy coincided with a natural gas surplus, creating a strong "spot" market in which distributors could purchase gas directly from producers at unregulated prices that were often much lower than FERC-approved pipeline rates.

Distributors who took advantage of the spot market were required to pass on the cost savings directly and entirely to their customers. The savings were substantial; the average residential consumer's rates were reduced 21% as a result of spot purchases. (FERC Order No. 500—H (Dec. 21, 1989), 54 Fed. Reg. 52344, 49 FERC Statutes and Regulations par. 30,519, citing *State Treatment of Take-or-Pay Settlement Costs*, 17 Gas Energy Rev. 2, 3 (Sept. 1989).) The American Gas Association estimated that spot purchases resulted in consumer savings that were six times greater than the take-or-pay costs in

question here. FERC Order No. 500—H (Dec. 21, 1989), 54 Fed. Reg. 52344, 49 FERC Statutes and Regulations par. 30,867, citing 17 Gas Energy Rev. at 3.

Although FERC's open-access policy was beneficial to consumers, it created huge potential liabilities for pipelines, whose gas costs were often locked in at high prices by their long-term take-or-pay contracts. Unable to reduce their prices to meet competition from the spot market, pipelines could not sell all of the gas they were required to take or pay for under their contracts with producers. As a result, pipelines were subject to billions of dollars of take-or-pay liability to producers. In the two years following FERC's adoption of the open-access policy, pipeline take-or-pay liability continued to accumulate, with no indication from FERC as to how the pipelines might handle the take-or-pay obligations.

In August 1987, FERC issued Order No. 500, which established a framework for pipelines to recover the take-or-pay costs from distributors. (FERC Order No. 500 (Aug. 14, 1987), 52 Fed. Reg. 30334, 40 FERC Statutes and Regulations par. 61,172.) In that Order, FERC expressed the view that pipelines ought to absorb some of the take-or-pay costs, rather than pass them on in full to the distributors, as part of an "equitable sharing" of the costs throughout the industry. FERC offered pipelines two alternative mechanisms for recovering portions of the take-or-pay costs from distributors.

Under the first alternative, pipelines could refuse to absorb any of the costs voluntarily and could seek full recovery of whatever portion of the take-or-pay costs FERC found to be prudently incurred. If a pipeline chose this option, however, it could recover its prudently incurred take-or-pay costs only by adding them to the cost of gas sold in the future, and distributors could avoid the charges by reducing their purchases.

FERC's second alternative offered pipelines guaranteed recovery of up to 50% of the take-or-pay costs, which could be direct-billed to distributors at a fixed rate, if the pipeline agreed to absorb an equal amount of the cost it charged distributors. The two alternatives were not mutually exclusive. A pipeline could use the second option to recover a portion of the costs (up to 50%) and the first option to recover the remainder.

To prevent distributors from avoiding the take-or-pay charges under the second alternative, FERC imposed the charges on distributors that had purchased gas from the pipeline during a particular period regardless of whether those distributors currently continued to do business with the pipeline. The costs were allocated among distributors based on each distributor's contribution to the pipeline's decline in sales between two set periods, generally before and after the open-access policy took effect. As a result, those distributors who had taken advantage of the open-access spot market to achieve lower costs for ratepayers were assigned higher take-or-pay obligations than were distributors who had continued to purchase higher cost gas from pipelines when lower cost gas was available directly from producers. (See *Associated Gas Distributors v. Federal Energy Regulatory Comm'n* (D.C. Cir. 1989), 893 F.2d 349 (striking down this "purchase deficiency" method of allocating take-or-pay costs on grounds that it constituted retroactive ratemaking and violated the filed rate doctrine).) In the present case, this court is not called upon to determine the issue raised in *Associated Gas Distributors* but only to decide whether the ICC is preempted from disallowing distributors full recovery, from their customers, of the FERC-allocated take-or-pay costs.

Pipelines serving distributors in the present case uniformly elected the second alternative, which ensured them recovery of a portion of their take-or-pay costs from distributors. The pipelines submitted their take-or-pay costs

to FERC for a determination that the costs were just and reasonable. Once that determination was made, FERC approved the take-or-pay rates to be direct-billed to distributors.

On April 27, 1988, the ICC began a general proceeding to investigate how Illinois distributors would recover the take-or-pay costs from their customers. All Illinois natural gas distributors were joined as parties. Intervening in the action were the Public Counsel and the Industrial Consumers, a group of 16 large, Illinois industrial energy consumers. As part of the proceeding, the ICC considered arguments submitted by a number of distributors, the ICC's staff, the Industrial Consumers, and the Public Counsel. On November 22, 1988, the ICC issued a final order concluding that the filed rate doctrine preempted it from not allowing distributors to recover fully the costs imposed on distributors as a result of FERC Order No. 500. The ICC therefore authorized Illinois distributors to recover, from their customers, all of the FERC-allocated take-or-pay costs.

The Industrial Consumers and the Public Counsel appealed the ICC order to the appellate court. (See Ill. Rev. Stat. 1989, ch. 111⅔, par. 10—201.) They argued that the filed rate doctrine did not apply to the take-or-pay costs and that the ICC should conduct prudence reviews to determine whether distributors had properly incurred the costs. The appellate court, with one justice dissenting, reversed the ICC's order. 191 Ill. App. 3d 450.

The appellate court held that the preemption analysis turned on whether FERC intended to preclude State regulatory commissions from determining recovery of the take-or-pay costs. (191 Ill. App. 3d at 462-65.) The majority construed FERC Order No. 500 as not precluding the ICC from reviewing take-or-pay costs or from requiring distributors to absorb some portion of the costs. The majority distinguished the present matter from two recent

United States Supreme Court cases in which the Court held that the filed rate doctrine prohibited State interference with distributors' recovery of FERC-approved costs. *Mississippi Power & Light Co. v. Mississippi ex rel. Moore* (1988), 487 U.S. 354, 101 L. Ed. 2d 322, 108 S. Ct. 2428 (involving FERC-mandated payments for nuclear power plant); *Nantahala Power & Light Co. v. Thornburg* (1986), 476 U.S. 953, 90 L. Ed. 2d 943, 106 S. Ct. 2349 (involving FERC-approved allocations of low-cost Federal power).

The appellate court reasoned that the Court in *Nantahala* and *Mississippi Power* merely gave effect to FERC's intent to preempt State authority in certain interstate power allocation decisions. (191 Ill. App. 3d at 463.) The majority concluded that, in contrast to the intent of FERC in those cases, FERC in this case did not intend to preempt State regulatory agencies from requiring distributors to absorb some of the take-or-pay costs. 191 Ill. App. 3d at 463.

The appellate court remanded the cause to the ICC with directions to admit evidence on two issues: the sharing of the distributors' take-or-pay costs between distributors and ratepayers, and "the factors relevant to the prudence of the past purchasing practices of the [distributors] as they relate to take-or-pay costs." (191 Ill. App. 3d at 465.) The latter would require the ICC to conduct what is called a "prudence review" of the distributors' past purchasing decisions.

The dissenting justice believed that the filed rate doctrine preempted the ICC from conducting a prudence review and furthermore that the doctrine required the ICC to allow recovery by distributors from their customers of the costs as reasonable operating expenses because FERC had determined that the take-or-pay costs were part of the wholesale cost of power. (191 Ill. App. 3d at 466 (Lund, J., dissenting).) The dissent also noted that the

ICC already had approved the distributors' purchasing decisions, at the time the decisions were made. 191 Ill. App. 3d at 468 (Lund, J., dissenting).

In the present appeal, the distributors and the ICC contend that the ICC is preempted from interfering with the full recovery of FERC-mandated take-or-pay costs. The Industrial Consumers and the Public Counsel submit that FERC intended an equitable sharing of the costs by all segments of the natural gas industry and that the appellate court, in allowing the ICC to review the take-or-pay costs and determine whether distributors should absorb some of the costs, properly gave effect to FERC's intentions.

### Federal Preemption and the Filed Rate Doctrine

We begin our analysis with a review of the preemptive effect of the Natural Gas Act (15 U.S.C. §717 *et seq.* (1988)), as construed by the courts in the filed rate doctrine. The relevant statutory provisions are sections 1(a), 4, and 5 of the Act. Section 1(a) provides in relevant part:

"[I]t is declared that the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest." (15 U.S.C. §717(a) (1988).)

Complementing this broad declaration of purpose, sections 4 and 5 of the Act provide for pervasive regulation of pipeline rates and charges by FERC.

The filed rate doctrine is an outgrowth of "straightforward principles" of Federal preemption. (*Arkansas Louisiana Gas Co. v. Hall* (1981), 453 U.S. 571, 577, 69 L. Ed. 2d 856, 863-64, 101 S. Ct. 2925, 2930.) The preemptive authority of the filed rate doctrine arises from section 4 of the Natural Gas Act (*Arkansas Louisiana*, 453

U.S. at 577, 69 L. Ed. 2d at 863, 101 S. Ct. at 2930) and is mandated by the supremacy clause of the United States Constitution. U.S. Const., art. VI, cl. 2; *Nantahala Power & Light Co. v. Thornburg* (1986), 476 U.S. 953, 90 L. Ed. 2d 943, 106 S. Ct. 2349.

In enacting the Natural Gas Act, Congress gave exclusive and plenary authority to FERC to regulate the transportation and sale for resale of natural gas moving in interstate commerce, including the power to regulate interstate natural gas prices. (*Northern Natural Gas Co. v. State Corp. Comm'n* (1963), 372 U.S. 84, 91, 9 L. Ed. 2d 601, 607, 83 S. Ct. 646, 650-51; *Illinois Natural Gas Co. v. Central Illinois Public Service Co.* (1942), 314 U.S. 498, 506-09, 86 L. Ed. 371, 376, 62 S. Ct. 384, 387-88.) Indeed, in *Illinois Natural Gas*, the United States Supreme Court explicitly confirmed Congress' intent as expressed in the Natural Gas Act to "occupy the field" in regulating interstate natural gas rates and services. *Illinois Natural*, 314 U.S. at 506-09, 86 L. Ed. at 376-78, 62 S. Ct. at 387-88.

From Congress' intent in the Natural Gas Act, as applied to rates approved by the Federal commission, the Supreme Court pronounced the rule of Federal preemption known as the filed rate doctrine. (*Montana-Dakota Utilities Co. v. Northwestern Public Service Co.* (1951), 341 U.S. 246, 95 L. Ed. 912, 71 S. Ct. 692.) The *Montana-Dakota* Court stated that "the right to a reasonable rate is the right to the rate which the [Federal] Commission files or fixes, and \*\*\* except for review of the Commission's orders, [a] court[ ] can assume no right to a different one on the ground that, in its opinion, it is the only or the more reasonable one." *Montana-Dakota*, 341 U.S. at 251-52, 95 L. Ed. at 919, 71 S. Ct. at 695.

This court has long recognized that the Natural Gas Act preempts the ICC from directly or indirectly setting natural gas rates. (*City of Chicago v. Illinois Commerce*

*Comm'n* (1958), 13 Ill. 2d 607.) Confirming the preemptive effect of FERC-set rates, the United States Supreme Court recently held that when a State regulatory commission determines intrastate retail rates, it must give binding effect to interstate power rates filed with FERC or fixed by FERC. *Nantahala,* 476 U.S. at 962, 90 L. Ed. 2d at 951, 106 S. Ct. at 2354.

We must reject the Industrial Consumers' suggestion that the take-or-pay costs are extraordinary one-time charges that are not subject to Federal preemption under the filed rate doctrine. The filed rate doctrine applies to the take-or-pay costs at issue here because they are FERC-approved costs associated with the procurement of gas from wholesale suppliers. (*Nantahala,* 476 U.S. at 966, 90 L. Ed. 2d at 954, 106 S. Ct. at 2356-57.) Citing with approval this court's decision in *City of Chicago,* the Supreme Court in *Nantahala* noted that State courts have broadly applied the filed rate doctrine in several contexts in which FERC had established wholesale power prices. (*Nantahala,* 476 U.S. at 965-66, 90 L. Ed. 2d at 954, 106 S. Ct. at 2356.) We believe that the preemptive effect of the filed rate doctrine encompasses the FERC charges in this context as well.

It is clear from the legislative history and express language of the Natural Gas Act, and from the consistent pronouncements by the Supreme Court, that Congress intended Federal law to occupy the field of regulating interstate sale of wholesale gas. We are thus compelled in this context of FERC-mandated take-or-pay costs to adhere to the consistent application of the preemptive effect of the filed rate doctrine.

### FERC's Intent

The Industrial Consumers and the Public Counsel argue that the appellate court in this case correctly held that the preemption issue here turns on FERC's intent as

expressed in Order No. 500. In Order No. 500, FERC stated that "it is the commission's view that there should be an equitable sharing of take-or-pay costs, among all segments of the industry." The Order also stated that, in FERC's view, States were not legally precluded from reviewing distributors' prudence in incurring the take-or-pay costs. (FERC Order No. 500 (Aug. 14, 1987), 52 Fed. Reg. 30334, 40 FERC Statutes and Regulations par. 61,172.) The appellate court relied on this language in determining that the ICC was not preempted from reviewing and disallowing portions of the FERC-approved costs.

After the appellate court announced its decision in this case, FERC issued Order No. 500—H (FERC Order No. 500—H (Dec. 21, 1989), 54 Fed. Reg. 52344, 49 FERC Statutes and Regulations par. 30,867). In that subsequent Order, FERC presented its interpretation of the constitutional implications of the filed rate doctrine. FERC concluded that prudence reviews by State agencies in the take-or-pay context would not contravene Congress' intent in enacting the Natural Gas Act. In the order, FERC specifically suggested that State utility commissions may properly conduct prudence reviews of direct-billed take-or-pay charges or design methods for inducing distributors to agree "voluntarily" to absorb a portion of the costs in order to effectuate a policy of "sharing" the costs. FERC summarily reaffirmed these views in Order No. 500—I (Feb. 26, 1990), 55 Fed. Reg. 6605, 50 FERC Statutes and Regulations par. 30,880.

We reject, on several grounds, the argument that FERC's intent determines the preemptive effect of the filed rate doctrine on distributors' recovery of take-or-pay costs. Setting forth the basic inquiry governing the review of a regulatory agency's interpretation of its own powers, the Supreme Court has stated, "If the intent of Congress is clear, that is the end of the matter; for the

court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." (*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.* (1984), 467 U.S. 837, 842-43, 81 L. Ed. 2d 694, 703, 104 S. Ct. 2778, 2781.) For the reasons that follow, we conclude that FERC's intent is irrelevant to the application of the filed rate doctrine in the context of retail ratemaking.

As our discussion of the Natural Gas Act and the filed rate doctrine demonstrates, the preemptive force of FERC-approved costs and allocations is derived from Federal statute and the supremacy clause of the Constitution. FERC cannot rewrite the statutory provisions of the Natural Gas Act and has no authority to deviate from the clear intent of Congress. When FERC promulgates regulations, it cannot dispense with the supremacy clause and the intent of Congress by saying that it believes inconsistent State regulation is permissible.

A recent application of the filed rate doctrine demonstrates that, contrary to the arguments advanced by the Industrial Consumers and the Public Counsel, the intentions of FERC as expressed in Order No. 500 and Order No. 500—H have no power to alter the preemptive effect of the Natural Gas Act. (*Columbia Gas Transmission Corp. v. Federal Energy Regulatory Comm'n* (D.C. Cir. 1990), 895 F.2d 791.) The *Columbia Gas* court, in allowing distributors to recover in full costs similar to the take-or-pay costs at issue here, explicitly rejected the proposition that FERC's intent, as expressed in its orders, determines whether the filed rate doctrine applies in a given case. (*Columbia Gas*, 895 F.2d at 797.) The court stated that it was unaware of "any principle in equity or law that empowers an agency to ignore explicit legislative commands in order to mitigate the damage its errors of judgment or rulemaking delays may have caused." (*Columbia Gas*, 895 F.2d at 797.) Similarly, though FERC

may view preemption as an obstacle to the proper resolution of the take-or-pay problems created by the open-access policy, the agency is not empowered to alter the legislatively mandated preemptive effect of its earlier decisions.

Additionally, even though FERC has authority and expertise generally to adopt new policies when faced with new developments in the industry, it has no power to adopt a policy that directly conflicts with its governing statute. (See *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.* (1990), 497 U.S. 116, 111 L. Ed. 2d 94, 110 S. Ct. 2759 (Interstate Commerce Commission has no authority to deviate from filed rates, despite its pleas that such deviation was required in light of deregulation of motor carrier industry).) In this case, FERC's suggestion that State regulatory commissions are free to conduct prudence reviews and make arrangements for "sharing" of take-or-pay costs is directly at odds with the policy of the filed rate doctrine. The Supreme Court has consistently acknowledged that the filed rate doctrine prohibits a State commission from "trapping" FERC-approved wholesale costs, which would occur if a State commission prevented a distributor from fully recovering those wholesale costs in retail rates. (*Mississippi Power*, 487 U.S. 354, 101 L. Ed. 2d 322, 108 S. Ct. 2428; *Nantahala*, 476 U.S. at 970, 90 L. Ed. 2d at 956, 106 S. Ct. at 2358-59.) Thus, the filed rate doctrine not only ensures the integrity of FERC proceedings (*Mississippi Power*, 487 U.S. at 375, 101 L. Ed. 2d at 340, 108 S. Ct. at 2440-41) but also protects distributors from the trapping of wholesale costs (*Mississippi Power*, 487 U.S. at 372, 101 L. Ed. 2d at 339, 108 S. Ct. at 2439; *Nantahala*, 476 U.S. at 970, 90 L. Ed. 2d at 956, 106 S. Ct. at 2358-59). We find no source of authority empowering FERC to withdraw that protection in order to implement the "equitable" solutions it has suggested in Order No. 500—H.

While the Industrial Consumers and the Public Counsel may believe that FERC's suggestions provide a pragmatic solution to the take-or-pay liabilities, FERC's solution suffers a significant infirmity. As the above discussion demonstrates, FERC's suggestions ignore the constitutional limitations on the States' power to deny full recovery of FERC-mandated pipeline charges. Our decision in this case turns on the will of Congress, as unambiguously expressed in the provisions of the Natural Gas Act. (See *Chevron*, 467 U.S. at 842-43, 81 L. Ed. 2d at 703, 104 S. Ct. at 2781.) Here the intent of Congress is clear and controlling: "States may not bar regulated utilities from passing through to retail consumers FERC-mandated wholesale rates." *Mississippi Power*, 487 U.S. at 372, 101 L. Ed. 2d at 338, 108 S. Ct. at 2439. See also *Nantahala*, 476 U.S. at 970, 90 L. Ed. 2d at 956, 106 S. Ct. at 2358-59; *City of Chicago*, 13 Ill. 2d at 616.

## Prudence Review

The appellate court in this case directed the ICC on remand to "admit evidence pertaining to *** the factors relevant to the prudence of the past purchasing practices of the [distributors] as they relate to take-or-pay costs." (191 Ill. App. 3d at 465.) We believe, however, that the filed rate doctrine prohibits State prudence review of FERC-mandated costs (*Mississippi Power*, 487 U.S. at 375, 101 L. Ed. 2d at 340-41, 108 S. Ct. at 2440-41), and we find no exception to the filed rate doctrine under the circumstances here.

Without deciding the issue, the Supreme Court has acknowledged the exception to the filed rate doctrine articulated in *Pike County Light & Power Co. v. Pennsylvania Public Utility Comm'n* (1983), 77 Pa. 268, 273-74, 465 A.2d 735, 737-38, and *Kansas-Nebraska Natural Gas Co. v. State Corp. Comm'n* (1980), 4 Kan. App. 2d 674, 679-80, 610 P.2d 121, 127. Under that exception, States retain

the authority to review the prudence of a distributor's actions in incurring FERC-approved supply charges when the distributor had a choice whether to incur the charge. (*Mississippi Power*, 487 U.S. at 373-74, 101 L. Ed. 2d at 339-40, 108 S. Ct. at 2440; *Nantahala*, 476 U.S. at 972, 90 L. Ed. 2d at 958, 106 S. Ct. at 2359-60.) For example, a State regulatory agency could find that purchase of a particular quantity of power from a particular source was unreasonable if lower cost power was available elsewhere, even if the cost of the purchased power had been approved by FERC and therefore deemed reasonable. *Mississippi Power*, 487 U.S. at 373, 101 L. Ed. 2d at 340, 108 S. Ct. at 2440; *Nantahala*, 476 U.S. at 972, 90 L. Ed. 2d at 958, 108 S. Ct. at 2360.

That exception to the filed rate doctrine does not apply here, for the distributors in this case cannot avoid the current take-or-pay charges. (*Mississippi Power*, 487 U.S. at 374, 101 L. Ed. 2d at 340, 108 S. Ct. at 2440.) As the appellate court acknowledged, the FERC-approved take-or-pay costs and the FERC-approved allocation of those costs are mandatory. (191 Ill. App. 3d at 464.) Under orders issued by FERC, the distributors are liable to the pipelines for the take-or-pay costs regardless of any actions the distributors may take now or in the future, even if they cease purchasing gas from the pipeline imposing the charge.

Because FERC has allocated the sharing of costs in such a manner that distributors have no opportunity to accept or reject the amount billed, the ICC may not conduct a prudence review of the take-or-pay charges for the purpose of determining whether some part of the allocated costs may or may not be recovered through the distributor's rates. (*Mississippi Power*, 487 U.S. at 374, 101 L. Ed. 2d at 340, 108 S. Ct. at 2440.) State prudence review under these circumstances would be an impermissible collateral attack on the reasonableness of FERC's cost

allocations and could result in an impermissible trapping of FERC-mandated costs. (*Mississippi Power*, 487 U.S. at 373 n.12, 101 L. Ed. 2d at 339 n.12, 108 S. Ct. at 2439 n.12.) The ICC is not empowered, through the artifice of a prudence review, to trap federally mandated costs. See *Mississippi Power*, 487 U.S. at 372, 101 L. Ed. 2d at 339, 108 S. Ct. at 2439. See also *Kentucky West Virginia Gas Co. v. Pennsylvania Public Utility Comm'n* (3d Cir. 1988), 862 F.2d 69, 74 ("the principles of *Nantahala Power* and *Mississippi Power*" prohibited State prudence review of a distributor's mandatory costs—identical in effect to the take-or-pay clauses at issue here—because the distributor could not avoid the costs).

We find that the case before us presents no exception to the filed rate doctrine. Indeed, this case presents the classic situation for application of the doctrine, for it involves an intermediary faced with a FERC-set wholesale rate, who would, if the doctrine were not applied, be forced to sell power at less than its reasonable cost as determined by FERC. *Nantahala*, 476 U.S. at 969, 90 L. Ed. 2d at 956, 106 S. Ct. at 2358.

Moreover, even if in this case the filed rate doctrine permitted State review of distributors' past purchasing decisions, it would be difficult to say in what respect distributors have been imprudent in incurring these particular costs. The distributors did not know and could not have foreseen at the time that those purchasing decisions would lead to the imposition of direct-billed take-or-pay costs years later. Until 1985, when FERC issued Order No. 436 establishing the open-access policy, no one knew that the long-term take-or-pay contracts between pipelines and producers would create multibillion dollar liabilities for the pipelines. And it was not until FERC issued Order No. 500 in 1987 that distributors had any idea that pipeline take-or-pay liabilities would be passed on to them. (See *Associated Gas Distributors v. Federal Energy Reg-*

*ulatory Comm'n* (D.C. Cir. 1989), 893 F.2d 349, 356 (rejecting the suggestion that FERC's decision in Order No. 500 could have been anticipated based on "hints" in a 1984 FERC decision).) By that time, the purchasing decisions that the appellate court has directed the ICC to review for prudence had long since been made.

As the distributors point out in their briefs to this court, unless clairvoyance has become an element of prudence, there simply is no basis on which the ICC could conduct a meaningful prudence review. In light of our result, we do not consider the separate argument by the distributors and the ICC that a prudence review under these circumstances would be inconsistent with Illinois law. See *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n* (1988), 171 Ill. App. 3d 948, 959.

In sum, we hold that fundamental principles of Federal preemption, as reflected in the longstanding and consistent application of the filed rate doctrine, prohibit the ICC from conducting prudence reviews of FERC-mandated take-or-pay costs. Illinois distributors must be allowed to pass through to their customers the full amount of these charges. Accordingly, we reverse the judgment of the appellate court and reinstate the order of the ICC.

*Appellate court reversed;*
*Illinois Commerce Commission order affirmed.*

JUSTICES BILANDIC and HEIPLE took no part in the consideration or decision of this case.