(No. 65088.—

CITIZENS UTILITIES COMPANY OF ILLINOIS, Appellee, v. THE ILLINOIS COMMERCE COMMISSION *et al.*, Appellants.

*Opinion filed September 22, 1988.*

Kathleen Nolan and Edward P. O'Brien, Special Assistant Attorneys General, of Chicago, for appellant Illinois Commerce Commission.

George A. Marchetti, of Moss & Bloomberg, Ltd., of Bolingbrook, for appellant Village of Bolingbrook.

Lee N. Abrams, Stephen J. Mattson and John E. Muench, of Mayer, Brown & Platt, of Chicago, for appellee.

JUSTICE MILLER delivered the opinion of the court:

This appeal concerns an order of the Illinois Commerce Commission (the Commission) regarding certain ratemaking questions involving the Citizens Utilities Company of Illinois (Citizens). In 1985 the Commission entered an order deducting $4,253,953 from Citizens' rate base and reducing the company's tax depreciation expense for ratemaking purposes by $403,432. Citizens sought review of those decisions, and the circuit court of

Will County affirmed the Commission's order. Citizens appealed, and the appellate court invalidated the reduction in the utility's rate base but upheld the reduction in the company's depreciation expense. (153 Ill. App. 3d 28.) We allowed the joint petition for leave to appeal filed by the Commission and the Village of Bolingbrook, intervenor. See 107 Ill. 2d R. 315(a).

Citizens, a wholly owned subsidiary of the Citizens Utilities Company, provides water service to about 23,000 customers and sewer service to about 22,000 customers in Cook, Du Page, and Will Counties. Citizens is a public utility, as that term is defined in "An Act concerning public utilities" (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 10.3), and therefore the company is subject to the regulatory authority of the Commission. On March 16, 1984, Citizens filed an application with the Commission for an order approving its recorded balance of deferred income taxes as of December 31, 1983, and for other relief. The Village of Bolingbrook and the Water Consumers Association, Inc., were permitted to intervene in the proceeding. Following hearings on the matter before a hearing officer, the Commission entered its order on January 30, 1985. Of relevance here, the Commission reduced the company's rate base by $4,253,953 and reduced the amount of its tax depreciation expense for ratemaking purposes by $403,432. The Commission subsequently denied Citizens' application for rehearing.

Citizens sought review of the Commission's order in the circuit court of Will County. (See Ill. Rev. Stat., 1984 Supp., ch. 111²/₃, par. 72.) There the matter was consolidated with an appeal taken by Citizens from the order of the Commission in a separate case, which involved the company's request for a general rate increase. Following the submission of briefs by the parties, the circuit judge entered a judgment affirming the Commission's orders in both cases.

Citizens appealed the circuit court's judgment. The appellate court reversed that part of the circuit court's judgment affirming the Commission's order making a $4.2 million reduction in Citizens' rate base. The appellate court believed that the rate base reduction constituted retroactive ratemaking and therefore was invalid. The appellate court affirmed that part of the circuit court's judgment affirming the Commission's decision to reduce Citizens' tax depreciation expense for ratemaking purposes by $403,432 for the 1983 test year. Finally, on a question that is not at issue in this appeal, the appellate court reversed that part of the circuit court's judgment affirming the Commission's decision to deny Citizens a working capital allowance for the test year.

In this appeal the Commission and the Village of Bolingbrook, as intervenor, challenge the appellate court's decision invalidating the $4.2 million reduction in Citizens' rate base; the Commission and the Village do not contest the appellate court's decision concerning the working capital allowance. Citizens challenges, as grounds for cross-relief, the appellate court's decision upholding the reduction of $403,432 in its tax depreciation expense for ratemaking purposes. See 107 Ill. 2d R. 318(a).

In establishing the rates that a public utility is to charge its customers, the Commission bases the determination on the company's operating costs, rate base, and allowed rate of return. A public utility is entitled to recover in its rates certain operating costs. A public utility is also entitled to earn a return on its rate base, or the amount of its invested capital; the return is the product of the allowed rate of return and rate base. The sum of those amounts—operating costs and return on rate base—is known as the company's revenue requirement. The components of the ratemaking determination may be expressed in "the classic ratemaking formula R (reve-

nue requirement) = C (operating costs) + Ir (invested capital or rate base times rate of return on capital)." (*City of Charlottesville, Virginia v. Federal Energy Regulatory Comm'n* (D.C. Cir. 1985), 774 F.2d 1205, 1217, citing T. Morgan, Economic Regulation of Business 219 (1976).) The same formula is used by the Commission in ratemaking determinations for Illinois. The revenue requirement represents the amount the company is permitted to recover from its customers in the rates it charges. Ratemaking is done in the context of a test year, which in this case was 1983.

Citizens has what is known in the industry as plant acquired by contract, or contract plant. Plant acquired by contract consists of facilities, such as pumping stations and water mains, that were constructed by a real estate developer and that later were deeded by the developer to the utility company upon completion of the subdivision; generally the utility pays the developer a regular fee based on the rates the utility charges its customers. But because the public utility acquires the contract plant at no cost to itself, contract plant is not included in the company's rate base for ratemaking purposes, and therefore the company does not earn a return on the asset.

The questions presented in this case arise from the different treatment accorded contract plant for tax purposes and for ratemaking purposes. Included in the operating costs component of the revenue requirement formula are certain expenses, such as income taxes. In computing its Federal income taxes, Citizens depreciates its contract plant, and in that way the company is allowed to reduce the amount of income taxes it must pay. But in computing its income tax expense for ratemaking purposes, Citizens has not depreciated its contract plant, and therefore its income tax expense for ratemaking purposes has been higher than its income taxes. Thus,

Citizens has claimed, for ratemaking purposes, an income tax expense that is greater than the amount of taxes the company actually has paid the Federal government. It now appears that the higher tax figure was used in establishing the utility's rates for the years 1958 through 1982.

The Commission concluded that Citizens had compiled, as of December 31, 1983, a total of $4,657,385 in tax benefits in connection with the depreciation procedures for its contract plant. The Commission ordered that $403,432 in tax depreciation expense for the 1983 test year be deducted from the company's taxable income, reducing its income tax expense for ratemaking purposes. In addition, the Commission ordered that the balance of the benefits, $4,253,953, be deducted from Citizens' rate base. Both reductions are at issue here. As we have said, the Commission and the Village of Bolingbrook, intervenor, bring this appeal contesting the appellate court's reversal of the $4.2 million rate base reduction. At the same time, Citizens has contested, as grounds for cross-relief, the $403,432 reduction in its tax depreciation expense for ratemaking purposes in the 1983 test year.

We point out as a preliminary observation that the present case is governed by "An Act concerning public utilities" (Ill. Rev. Stat. 1983, ch. 111⅔, pars. 1 through 95) (the Act). Although the Act has been superseded by the Public Utilities Act (Ill. Rev. Stat. 1985, ch. 111⅔, pars. 1—101 through 14—110), the new statute does not apply to actions or proceedings, such as this one, that were pending on its effective date, January 1, 1986. (Ill. Rev. Stat. 1985, ch. 111⅔, par. 4—402; see *People ex rel. Hartigan v. Illinois Commerce Comm'n* (1987), 117 Ill. 2d 120, 130-31.) We do not mean to suggest, however, that our result would necessarily be different if the present case were governed instead by the new Public

Utilities Act; many of the statutory provisions relevant here have in fact been reenacted, without substantive change, as part of the new statutory regime.

## The Rate Base Reduction

The appellate court held that the $4.2 million rate base reduction ordered by the Commission was invalid as retroactive ratemaking. The Commission and the Village of Bolingbrook maintain, in their joint brief, that Citizens has waived any contention that the rate base reduction is invalid as retroactive ratemaking because the company failed to make the precise objection in its application for rehearing before the Commission. In its application for rehearing Citizens questioned both the rate base reduction and the reduction in depreciation expense; the company did not, however, argue that the rate base reduction was invalid as retroactive ratemaking. Although the Commission and the Village raised the waiver argument in the appellate court, that court failed to address the question in its opinion. In this court, Citizens does not dispute that it first raised the retroactive-ratemaking objection in the circuit court, but the company contends that it was not until the Commission filed its circuit court brief that the Commission made any attempt to justify the rate base reduction on the ground that it was necessary to prevent Citizens from earning a return on non-investor-supplied funds.

Section 67 of the Act provides that "[n]o appeal shall be allowed from any rule, regulation, order or decision of the Commission unless and until an application for a rehearing thereof shall first have been filed with and finally disposed of by the Commission ***. No person or corporation in any appeal shall urge or rely upon any grounds not set forth in such application for a rehearing before the Commission." (Ill. Rev. Stat. 1983, ch. 111⅔, par. 71.) This court has previously enforced the plain

terms of that provision, holding that a party may not raise on review an issue or objection that was not expressly raised in the required application for rehearing. See *Independent Voters of Illinois v. Illinois Commerce Comm'n* (1987), 117 Ill. 2d 90, 100-01; *Chicago Junction Ry. Co. v. Illinois Commerce Comm'n* (1952), 412 Ill. 579, 588-90; *Brotherhood of Railroad Trainmen v. Elgin, Joliet & Eastern Ry. Co.* (1943), 382 Ill. 55, 61.

We do not believe that Citizens has waived consideration of its retroactive-ratemaking argument. It bears repeating that the tax benefits at issue arose from the Commission's calculations of the operating costs component of the revenue requirement formula. The tax benefits were never included as part of Citizens' rate base, and therefore the rate base reduction did not remove an item that the Commission had at one time incorrectly installed as part of the company's rate base. The Commission's order failed to articulate a distinct rationale for the $4.2 million reduction in rate base, however. Although the Commission divided the total amount of the tax benefits, $4,657,385, into two separate components—$403,432, representing the tax benefits for test year 1983, and $4,253,953, representing the balance—the Commission did not make any distinction in its treatment of the two amounts. Rather, the bulk of the Commission's discussion of the question was devoted to what can only be considered an analysis of the depreciation question for the test year, 1983.

The Commission's order provided a summary of its decisions regarding the treatment of the tax benefits resulting from Citizens' contract plant; the Commission adopted the summary nearly verbatim from a proposed order submitted by an intervening party, the Water Consumers Association, Inc. The Commission's order stated:

"The Commission believes that even if Petitioner's [*i.e.*, Citizens'] customers do not pay a return on depreci-

ation expense on Plant Acquired By Contract, the customers have provided the revenues which have led to the income which Petitioner's parent has been able to shelter from income taxes by taking tax depreciation on Plant Acquired by Contract. Petitioner concedes it has no investment in Plant Acquired by Contract. Developers who sold homes to Petitioner's customers paid for the plant and presumably have already passed that cost onto the customers. The tax benefits ultimately received by the shareholders of Petitioner's parent company are a form of cost-free capital provided by its customers. The customers have provided the revenue which has been sheltered from tax liability, and they have substantially contributed to the plant which Respondent [*sic*] has been able to use at no cost to itself to shelter customer-provided revenues from taxes. No reasonable explanation has been presented by Petitioner to justify permitting its shareholders to retain all the tax benefits obtained at the expense of its customers and at no cost to Petitioner. Had the customers not provided such revenues, Petitioner would have had to raise capital in the ordinary capital markets at a cost to its shareholders. We know of no reason why Petitioner's customers should be required through rates to bear an imputed level of income tax expense Petitioner does not currently pay and may never have to pay. The Staff recommendation with respect to Plant Acquired by Contract is adopted."

In finding (9) the Commission stated:

"[T]he amount of tax benefits, determined to be $4,657,385 as of December 31, 1983, associated with Petitioner's Plant Acquired By Contract, is not includable in a calculation of Petitioner's deferred income taxes; tax depreciation expense on Plant Acquired By Contract, determined to be $403,432 for the year ending December 31, 1983, should be deducted from Petitioner's taxable income, which will result in a reduction of income tax expense for ratemaking purposes; the balance of $4,253,953 should be reflected as a reduction of Petitioner's rate base for ratemaking purposes[.]"

Although the order contains language suggesting that the tax benefits were non-investor-supplied capital, the order does not state that a reduction would be necessary to prevent the company from earning a return on those sums in the future.

Because the grounds for the Commission's decision making the rate base reduction are not apparent from the order, we do not believe that Citizens' failure to make the retroactive-ratemaking objection in its application for rehearing must preclude the company from raising that argument on review. Under the Act, ratemaking is a legislative function. (*People ex rel. Hartigan v. Illinois Commerce Comm'n* (1987), 117 Ill. 2d 120, 142; *Du Page Utility Co. v. Illinois Commerce Comm'n* (1971), 47 Ill. 2d 550, 557-58; *Illinois Central R.R. Co. v. Illinois Commerce Comm'n* (1944), 387 Ill. 256, 275.) An order of the Commission will be set aside on review if it appears that the Commission acted outside the scope of its authority or infringed on a constitutional right, or that its findings are against the manifest weight of the evidence. (*Independent Voters of Illinois v. Illinois Commerce Comm'n*, 117 Ill. 2d at 95; *People ex rel. Hartigan*, 117 Ill. 2d at 142; *Champaign County Telephone Co. v. Illinois Commerce Comm'n* (1967), 37 Ill. 2d 312, 320-21; Ill. Rev. Stat. 1983, ch. 111⅔, par. 72.) Meaningful review of regulatory orders is thwarted, however, if the Commission's failure to express the grounds for its decisions operates to shelter them from review. Therefore, we will consider Citizens' objection that the rate base reduction is invalid as retroactive ratemaking; following that, we shall take up the Commission's defenses for its decision.

We believe that the real effect, whether intended or not, of the $4.2 million reduction in Citizens' rate base is to deny retroactively the tax benefits the Commission

permitted the company to enjoy during the period from 1958 to 1982. Such action clearly conflicts with fundamental principles of ratemaking in Illinois. The prohibition of retroactive ratemaking is derived from the overall scheme of the Act and the role of the Commission in the ratemaking process. (*Mandel Brothers, Inc. v. Chicago Tunnel Terminal Co.* (1954), 2 Ill. 2d 205, 210.) The Act authorizes reparations only for what are deemed "excessive" charges. (Ill. Rev. Stat. 1983, ch. 111⅔, par. 76.) A rate is effective once it is established by the Commission, unless the rate order is stayed pending review. (Ill. Rev. Stat. 1983, ch. 111⅔, par. 75.) Moreover, a public utility is required to charge the rates determined by the Commission, in its legislative capacity (Ill. Rev. Stat. 1983, ch. 111⅔, par. 37), and penalties may be imposed if the company fails to charge the established rates (Ill. Rev. Stat. 1983, ch. 111⅔, par. 80). The rule prohibiting retroactive ratemaking is consistent with the prospective nature of legislative activity, such as that performed by the Commission in setting rates. Moreover, because the rule prohibits refunds when rates are too high and surcharges when rates are too low, it serves to introduce stability into the ratemaking process. See Poor, *Utility Rates Pending Judicial Review: A Riddle Wrapped in a Mystery in Illinois*, 17 J. Marshall L. Rev. 743, 753-56 (1984).

The operation of these provisions is well illustrated by the opinion in *Mandel Brothers*, where the court first enunciated the rule against retroactive ratemaking. That case involved a request by a shipper to recover reparations for allegedly excessive rates charged by a carrier. New, increased rates had taken effect upon the Commerce Commission's approval of them, but the increase was later set aside on judicial review. The shipper then filed with the Commission a complaint for reparations, seeking reimbursement for its payment of the invalid

rates. The Commission denied the shipper's request for reparations. The circuit court reached a contrary result, allowing recovery of reparations except for the period for which the court believed the action was barred by the applicable statute of limitations. This court ruled that no reparations could be awarded and therefore did not consider whether the action was time barred.

The court in *Mandel Brothers* observed that the common law right to recover reparations for excessive rates had been superseded by section 72 of the Act (Ill. Rev. Stat. 1953, ch. 111⅔, par. 76), which authorized the Commission to permit reparations for what were termed "excessive" rates. Drawing a distinction between rates set by a utility itself and those established by the Commission, the court noted that under the prevailing view Commission-established rates, though later set aside on judicial review, will not form the basis for an action for reparations. The court went on to reject the shipper's argument that, because the Commission in that case, acting quasi-judicially, had simply approved as reasonable the schedule of rates submitted to it by the carrier, the carrier could be deemed to have set its own rates. The court ruled that the Commission's approval of the new rates was "legislative in character and prospective in its operation. The procedure fixed by the act and followed by the commission unmistakably so indicates." (*Mandel Brothers*, 2 Ill. 2d at 210.) In support of that conclusion the court noted that under section 36 of the Act any proposed rate changes must be filed with the Commission, which is authorized to conduct hearings on the rate proposal and to establish just and reasonable rates. (Ill. Rev. Stat. 1953, ch. 111⅔, par. 36.) In addition, section 37 forbids a utility to charge rates different from those established by the Commission, and section 76 prescribes penalties for regulated companies that fail to charge the approved rates. (Ill. Rev. Stat. 1953, ch. 111⅔, pars. 37,

80.) The rate increase at issue in *Mandel Brothers* had been established following a hearing, in accordance with the statutory procedure.

In *Mandel Brothers* the court also rejected the shipper's argument that reparations were recoverable because the action of the reviewing court in setting aside the rate increase represented a judicial declaration that the increase was in fact excessive under section 72 of the Act. The court believed that such an interpretation would be inconsistent with the statutory scheme. Significant in that regard was section 71 of the Act, concerning judicial review of Commission orders; section 71 provided that a rate order is not stayed pending review except upon court order. (Ill. Rev. Stat. 1953, ch. 111⅔, par. 75.) The court noted that in the case before it no order had been entered, or had been requested, staying the challenged rate increase. The court stated in conclusion, "It follows that the rate approved by the Commerce Commission as just and reasonable was the rate which the utility was required to charge so long as the order of the commission remained in effect. It cannot therefore be said that in charging that rate the utility charged an excessive rate which gave rise to a claim for reparations." *Mandel Brothers*, 2 Ill. 2d at 211-12.

The continuing vitality of *Mandel Brothers* was demonstrated recently in *Independent Voters of Illinois v. Illinois Commerce Comm'n* (1987), 117 Ill. 2d 90, where we reaffirmed the rule against retroactive ratemaking. At issue in *Independent Voters* was an intervenor's request for a refund of the increased charges paid by telephone service customers under a rate order that had been invalidated by an earlier decision of this court. The refund request encompassed two distinct periods of time: charges incurred before this court issued its opinion invalidating the rate increase, and charges incurred after that date but before new rates took effect. Adhering to

*Mandel Brothers*, the court held in *Independent Voters* that no refund would be allowed with respect to the charges incurred before this court issued its decision invalidating the rate order; refunds were allowed, however, for excess charges imposed after that date. In denying any refund for the period before the date of this court's earlier decision, we rejected the intervenor's attempt to distinguish *Mandel Brothers* on the ground that the request was for restitution rather than reparations. We noted that the predicate for a restitutionary award—unjust enrichment—cannot be held to be present when the challenged rates, though later invalidated, are precisely the rates the company was required to charge for its service. (*Independent Voters*, 117 Ill. 2d at 97-99.) We also rejected the intervenor's argument that *Mandel Brothers* should be overruled because the legislature could not have intended that stay orders, authorized under section 71 of the Act, would constitute the only means of avoiding the costs of rate increases that ultimately are set aside. In declining to overrule *Mandel Brothers*, we noted that in the period since that decision the General Assembly had amended different provisions of the Act but had reenacted, without amendment, the provision in section 71 of the Act that Commission orders are not automatically stayed on review. *Independent Voters*, 117 Ill. 2d at 99-100.

With those principles in mind, we conclude that the $4.2 million reduction in Citizens' rate base ordered by the Commission constituted retroactive ratemaking, and that the Commission therefore acted outside the scope of its authority when it ordered the rate base reduction. It will be remembered that a public utility's revenue requirement, or the amount the company is entitled to collect from customers in the rates it charges for its service, is the sum of operating costs and allowed return on rate base. The tax benefits at issue here originated as

expenses that the company was allowed to recover. Just as there is no recovery of reparations for rates charged under a Commission order later held to be invalid, there can be no retroactive adjustment in this case simply because the Commission has now decided to treat the tax benefits differently. Allowing the rate base reduction to stand would sanction retroactive ratemaking, a practice that this court has long condemned as inconsistent with the statutory scheme and the Commission's role in the ratemaking process.

The Commission offers a number of defenses for the rate base reduction, and we shall consider them now. First, the Commission contends that the $4.2 million reduction in Citizens' rate base may be justified on the ground that the reduction is necessary to prevent the company from earning a return on non-investor-supplied capital. As we noted earlier in determining that Citizens had not waived consideration of the retroactive-ratemaking argument, the Commission failed to articulate a distinct rationale for its decision to make the $4.2 million reduction in the company's rate base. There is substantial Federal precedent supporting the view that an administrative decision will not be upheld on grounds different from those expressed by the agency itself in its decision. (See *American Textile Manufacturers Institute, Inc. v. Donovan* (1981), 452 U.S. 490, 539-40, 69 L. Ed. 2d 185, 220, 101 S. Ct. 2478, 2505-06; *Federal Power Comm'n v. Texaco, Inc.* (1974), 417 U.S. 380, 395-97, 41 L. Ed. 2d 141, 155-56, 94 S. Ct. 2315, 2325-26; *Federal Power Comm'n v. United Gas Pipe Line Co.* (1968), 393 U.S. 71, 72-73, 21 L. Ed. 2d 55, 56-57, 89 S. Ct. 55, 55-56 (*per curiam*); *Burlington Truck Lines, Inc. v. United States* (1962), 371 U.S. 156, 167-68, 9 L. Ed. 2d 207, 215-16, 83 S. Ct. 239, 245.) Application of the same rule in this case, as Citizens suggests, would preclude the Commission from urging in support of its decision an al-

ternative ground not contained in the order. Because the Commission in its order mentioned in passing that the tax benefits represented "cost-free capital" provided by ratepayers, we shall briefly consider the Commission's argument in support of the rate base reduction, rather than the alternative ground urged by Citizens.

The Commission believes that even though the tax benefits did not become a discrete component of Citizens' rate base, they represented customer-supplied funds, and therefore the company's receipt of them necessitated an offsetting reduction in rate base. In support of this theory the Commission cites *Lindheimer v. Illinois Bell Telephone Co.* (1934), 292 U.S. 151, 78 L. Ed. 1182, 54 S. Ct. 658, and *City of Alton v. Commerce Comm'n* (1960), 19 Ill. 2d 76. The Commission would derive from those cases the rule that a public utility's investors are not entitled to earn a return on sums that may be characterized as capital contributions by customers. We would note, however, that there was no contention made in either of the cited cases concerning retroactive ratemaking. The amounts at issue here were recovered by Citizens in past ratemaking orders as part of its income tax expense, and the validity of those orders cannot now be questioned.

The Commission also denies that the reduction in rate base constitutes retroactive ratemaking. Citing *Citizens Utilities Co. v. Illinois Commerce Comm'n* (1971), 49 Ill. 2d 458, and *Amax Zinc Co. v. Illinois Commerce Comm'n* (1984), 124 Ill. App. 3d 4, the Commission urges that a rate order may properly be based on historical patterns or practices and that the rate base reduction ordered here correctly took account of the company's past receipt of the tax benefits in question. In *Citizens Utilities* the Commission had initially entered an order providing for the issuance of a certain number of shares of stock by the regulated subsidiary to its corporate par-

ent as reimbursement of sums that the parent had expended in the subsidiary's behalf. In a later rate proceeding, however, it came to the Commission's attention that the parent had not spent the amount claimed in the earlier proceeding, and therefore the Commission amended its previous order, reducing the subsidiary's capital stock. In upholding the Commission's action, this court noted that the Commission had the authority to amend its orders and that the company had had the burden of properly establishing the stock issuance. In *Amax Zinc* the Commission relied on past electrical consumption levels by certain customers in setting a "ratchet" provision applicable to those customers' future rates. The appellate court rejected the argument that the Commission's use of the past figures constituted retroactive ratemaking. The court noted that the rates would apply only in the future and did not believe that the reliance on the past levels of use rendered the rate schedule retroactive.

We do not believe that either case supports the Commission's action here. In *Citizens Utilities* the Commission properly ordered the adjustment to the company's capital stock to correct the misrepresentation made by the company in the original proceeding. *Amax Zinc* illustrates the principle that ratemaking, done in the context of a test year, may require the use of certain projections or extrapolations from past data. In this case, in reducing Citizens' rate base, the Commission has attempted to correct what it now perceives as errors in the past rate orders. There has been no suggestion, however, that Citizens obscured the true bases of the earlier ratemaking decisions, or otherwise misled the Commission in making those determinations.

Finally, we disagree with the Commission's theory that only an order requiring the complete disgorgement by Citizens of all proceeds resulting from its use or in-

vestment of the tax benefits would constitute retroactive ratemaking. This argument suggests that the rate base reduction is in reality only an incomplete or partial remedy, because the Commission is permitting the company to retain whatever sums it has earned on the tax benefits. The Commission's order here will not be saved simply because a more thoroughgoing violation of the rule against retroactive ratemaking is imaginable.

*Reduction of Depreciation Expense*

Citizens argues, as grounds for cross-relief, that the Commission also erred in reducing the amount of its tax depreciation expense for the 1983 test year. Citizens makes two distinct arguments in support of this view. Citizens believes that the decision is an unwarranted departure from the Commission's established practice of permitting public utilities to retain tax benefits derived from contract plant and from other assets that are not included in rate base. Citizens also argues that the Commission's decision conflicts with certain Federal tax guidelines on depreciation benefits. Citizens asks that this part of the order be reversed outright or, in the alternative, that the cause be remanded so that the Commission may reconsider the issue.

The Commission explained in its order that it did not believe that ratepayers should pay in their rates a Federal income tax expense, computed for ratemaking purposes, that was greater than the amount of Federal income taxes actually attributable to Citizens' operations. Accordingly, the Commission reduced the company's tax depreciation expense by $403,432, the amount of the tax benefits the company otherwise would have enjoyed for the 1983 test year. In support of that reasoning the Commission cites *Monarch Gas Co. v. Illinois Commerce Comm'n* (1977), 51 Ill. App. 3d 892. In that case the appellate court upheld a Commission decision denying any

income tax expense for ratemaking purposes to a public utility that did not pay Federal income taxes because it was organized as a subchapter S corporation under the Internal Revenue Code. Relying on *Federal Power Comm'n v. United Gas Pipe Line Co.* (1967), 386 U.S. 237, 18 L. Ed. 2d 18, 89 S. Ct. 1003, and *City of Alton v. Commerce Comm'n* (1960), 19 Ill. 2d 76, the appellate court in *Monarch Gas* concluded that the tax provisions producing the economic benefit to the utility did not also determine the ratemaking treatment of the benefit. We agree that in this case the Commission was within its statutory authority in denying Citizens an expense for ratemaking purposes that it did not actually incur.

Citizens contends, however, that the Commission's decision requiring the company to pass on to ratepayers the tax benefits derived from contract plant, an asset not included in the company's rate base, is inconsistent with the Commission's long-standing practice of permitting public utilities to retain for their own use tax benefits resulting from assets that are not included in rate base. In support of this argument Citizens asserts that the Commission has applied that same treatment to a category known as plant financed by customer advances, which, like contract plant, is not included in a public utility's rate base.

The Commission unfortunately has failed to respond to Citizens' contention in this regard. Therefore, we are denied an explanation by the Commission why its treatment of tax benefits resulting from contract plant should now differ from its treatment of tax benefits resulting from other assets that are not included in rate base. But Citizens has not suggested any reason that would forbid the Commission to treat tax benefits associated with contract plant differently from tax benefits associated with advanced plant. Therefore, we do not agree with Citizens that the Commission could not adopt a different

view regarding the tax benefits resulting from contract plant.

Citizens also argues that the decision reducing the income tax expense for the 1983 test year may cause the company problems under certain normalization requirements of the Federal income tax laws. According to Citizens, the Internal Revenue Code requires it to use the same depreciation method in computing, for ratemaking purposes, both its depreciation expense and its income tax expense. This insures that the tax benefits resulting from the company's use of accelerated depreciation for tax purposes do not flow through to the ratepayers by way of a reduction in the company's rates. If flow-through occurs, the company may lose the right to claim, for income tax purposes, accelerated depreciation on its property. Thus, Citizens contends that the Commission's denial of the tax benefits for test year 1983 may jeopardize the company's right to claim accelerated depreciation deductions for Federal income tax purposes. Moreover, the company asserts that the Commission has a policy of acting in conformity with normalization requirements established by the Internal Revenue Service. The result in this case, the company fears, may be the loss of the very tax benefit the Commission is ordering the company to pass on to its ratepayers.

We agree with the Commission that the company's normalization argument has been waived. The argument should have been presented to the Commission in the first instance, and Citizens' failure to include the issue in its application for rehearing with the Commission precludes the company from raising it now, on judicial review. (Ill. Rev. Stat. 1983, ch. 111⅔, par. 71; see *Independent Voters of Illinois v. Illinois Commerce Comm'n* (1987), 117 Ill. 2d 90, 100-01.) The basis for the Commission's decision with respect to the denial of tax benefits for the 1983 test year was clear. As we indicated earlier,

in determining that Citizens had not waived consideration of its retroactive-ratemaking argument, the Commission's order was primarily a justification for its treatment of the 1983 test year benefits. The Commission believed that the ratepayers should not have to bear a tax expense greater than the amount actually attributable to the company's operations. Thus, the basis for the Commission's decision on this point was apparent, and if Citizens believed that the Commission's decision was inconsistent with certain Federal income tax requirements, Citizens should have voiced that concern to the Commission. Instead, Citizens failed to include this issue in its application for rehearing filed with the Commission.

Moreover, we do not agree with Citizens that the normalization argument did not become available until after the Commission rendered its decision in this case. Citizens correctly observes that the private letter ruling it now cites in support of its argument was not issued by the Internal Revenue Service until July 29, 1986, after the case had left the Commission's control. But the private letter ruling, which was issued to a different taxpayer, and which has no precedential effect, was an interpretation of existing tax provisions and regulations, and Citizens makes no claim that the provisions and regulations were not in existence at the time the instant controversy arose.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE STAMOS took no part in the consideration or decision of this case.