GENERAL MOTORS CORPORATION *et al.*, Petitioners, v. THE ILLINOIS COMMERCE COMMISSION *et al.*, Respondents.—THE PEOPLE *ex rel.* THE OFFICE OF PUBLIC COUNSEL, Petitioner, v. GENERAL MOTORS CORPORATION *et al.*, Respondents.

Fourth District Nos. 4—89—0101, 4—89—0105 cons.

Opinion filed December 5, 1989.—Rehearing denied January 11, 1990.

LUND, J., dissenting.

Stephen J. Moore, Public Counsel, of Chicago, and Jacqueline Abel, Assistant Public Counsel, of Springfield, for petitioner People *ex rel.* Office of Public Counsel.

Eric Robertson, Randall Robertson, and Edward C. Fitzhenry, all of Lueders, Robertson & Konzen, of Granite City, for other petitioners.

Neil F. Hartigan, Attorney General, of Springfield (Clyde Kurlander and Edward P. O'Brien, Special Assistant Attorneys General, of Chicago, of counsel), for respondent Illinois Commerce Commission.

Chapman & Cutler, of Chicago (Daniel J. Kucera and Frank A. Mraz, of counsel), for respondent United Cities Gas Company.

James Hinchliff, Thomas M. Patrick, Gerard T. Fox, and William M. Lopez, all of Chicago, for respondents Peoples Gas, Light & Coke Company and North Shore Gas Company.

Gary A. Brown, of Sorling, Northrup, Hanna, Cullen & Cochran, of Springfield, for respondent Central Illinois Public Service Company.

Katherine C. Swaller, of St. Louis, Missouri, for respondent Union Electric Company.

Stephen J. Mattson and Christian F. Binnig, both of Mayer, Brown & Platt, of Chicago, for respondents Northern Illinois Gas Company and Iowa-Illinois Gas & Electric Company.

Edward J. Hartman, Brent E. Gale, and Robert P. Jared, all of Davenport, Iowa, for respondent Iowa-Illinois Gas & Electric Company.

Clement F. Springer, Jr., and William D. Carstedt, both of DeFrees & Fiske, of Chicago, for respondent Interstate Power Company.

Owen E. MacBride, Frederick J. Sperling, and Rebecca J. Lauer, all of Schiff, Hardin & Waite, of Chicago, for respondent Illinois Power Company.

Defrees & Fiske, of Chicago (Edward J. Griffin, W. Michael Seidel, and David I. Addis, of counsel), for respondent Central Illinois Light Company.

JUSTICE KNECHT delivered the opinion of the court:

In recent years, there have been drastic changes in the distribution and sale of natural gas in this country. Traditionally, most local distribution companies (LDC's)—the companies which sell natural gas at retail to consumers—purchased their natural gas from pipeline companies, which in turn purchased natural gas from other pipeline

companies or from natural gas producers. Thus, the main function of most natural gas pipeline companies was to sell natural gas to LDC's. During the period subsequent to 1978, however, many purchasers of natural gas, including LDC's, sought to purchase gas directly from producers at lower rates than those charged by the pipeline companies. An obstacle to this practice was an unwillingness on the part of the pipeline companies to transport natural gas from producers to the LDC's. The pipelines feared transportation to their LDC customers of natural gas which the customers purchased directly from producers would reduce their own sales of natural gas. *Re Regulation of Natural Gas Pipeline After Partial Wellhead Decontrol* (1987), 52 Fed. Reg. 30,334, 89 Pub. Utilities Rep. 4th 312 (hereinafter Order 500).

A factor which made natural gas pipelines especially reluctant to incur any reduction in their sales of natural gas was "take or pay" clauses contained in contracts with gas producers into which the pipelines had entered during the natural gas shortages of the late 1970's and early 1980's. These clauses "obligate a pipeline (*a*) to take a specified quantity of gas over a specific period of time, (*b*) to make prepayments to the producer for the quantity of gas not so taken, and (*c*) to 'make up' [take] the volumes not so taken but already covered by such prepayments, also over a specific period of time." C.F. Phillips, Jr., The Regulation of Public Utilities: Theory and Practice 602 (1984).

In 1985, the Federal Energy Regulatory Commission (FERC) found the refusal of pipelines to transport natural gas for entities which purchased the gas from third parties was discriminatory and caused increased costs to consumers by denying them access to natural gas at the lowest reasonable prices. Therefore, FERC (1) required all pipelines performing "self-implementing transportation" to provide such transportation on a nondiscriminatory basis and thereby become "open access pipelines," (2) required pipelines which are required to become "open access pipelines" to eliminate rate structures which favor their merchant function over their transportation function, (3) required pipelines to allow their "firm sales customers" to alter the amount of gas they are contractually required to purchase by either reducing that level or converting it from firm sales to firm transportation, (4) adopted procedures designed to ease the entry of pipelines into new markets so that LDC's who had access to only one pipeline would have access to others, and (5) provided for expedited abandonment of gas subject to "reduced takes." *Re Regulation of Natural Gas Producers After Partial Wellhead Decontrol* (1985), 33 F.E.R.C. par. 61,007, 50 Fed. Reg. 42,408, *modified* (1985), 50 Fed. Reg. 52,217, *modified further* (1986), 51 Fed. Reg. 6,398, *rehearing denied*

(1986), 34 F.E.R.C. par. 61,404, *rehearing denied* (1986), 34 F.E.R.C. par. 61,405, *reconsideration denied* (1986), 34 F.E.R.C. par. 61,403 (hereinafter Order 436).

In Order 500, FERC addressed a matter which it did not discuss in Order 436—the relief to be afforded pipelines which had burdensome take-or-pay contract obligations. FERC stated:

"[I]t is difficult to assign blame for the pipeline industry's take-or-pay problems. In brief, no one segment of the natural gas industry or particular circumstance appears wholly responsible for the pipelines' excess inventories of gas. As a result, all segments should shoulder some of the burden of resolving the problem." (Order 500, 52 Fed. Reg. at 30,337, 89 Pub. Utilities Rep. 4th at 318-19.)

In Order 500, FERC adopted two alternative mechanisms for relief from take-or-pay contract obligations, which enabled pipelines to recover portions of their costs of "buying out" or "buying down" such contracts. Under the first alternative, pipelines may recover in their "sales commodity charges" all such costs which were "prudently incurred." Under the second alternative, pipelines which transport gas on a nondiscriminatory basis under FERC's regulations may elect to assume an equitable share (from 25% to 50%) of the costs of buying out or buying down their take-or-pay contracts and may recover an equal share of such costs through fixed charges to their customers. The remaining amounts of take-or-pay contract buy out and buy down expenses can be recovered through "a commodity surcharge or volumetric surcharge on total pipeline throughput." Order 500, 52 Fed. Reg. at 30,341, 89 Pub. Utilities Rep. 4th at 325.

On April 27, 1988, the Illinois Commerce Commission (ICC) began an investigation into the manner in which Illinois LDC's may recover the take-or-pay contract buy out or buy down costs which they are required to pay to their pipelines. In an interim order issued July 20, 1988, the ICC noted pipelines are uniformly opting for the second take-or-pay cost recovery mechanism permitted by FERC, under which they may direct bill a percentage of their take-or-pay costs to their customers. In that order the ICC concluded the doctrine of Federal preemption and the "filed rate" doctrine (see *Mississippi Power & Light Co. v. Mississippi ex rel. Moore* (1988), 487 U.S. 354, 101 L. Ed. 2d 322, 108 S. Ct. 2428; *Nantahala Power & Light Co. v. Thornburg* (1986), 476 U.S. 953, 90 L. Ed. 2d 943, 106 S. Ct. 2349) prohibit it from preventing LDC's from recovering the FERC-approved take-or-pay costs which are allocated to them. The ICC further held presentation of evidence was required concerning the questions of

whether the LDC's take-or-pay costs can be recovered through the mechanism of the LDC's uniform purchased gas adjustment clauses (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 9—220) and whether the LDC's take-or-pay costs should be recovered through rates applicable to all categories of customers. The ICC also concluded any offsetting decreases in LDC expenses unrelated to take-or-pay costs could not be considered in determining the amount of such costs which LDC's can recover. *Re Costs Associated with Take-or-pay Charges* (Ill. Com. Comm'n 1988), 95 Pub. Utilities Rep. 4th 5.

In a further order entered on November 22, 1988, the ICC denied a request for reconsideration of its July 20, 1988, interim order. In its November 22, 1988, order, the ICC held take-or-pay charges which are direct billed to LDC's should preferably be recovered through the LDC's uniform purchased gas adjustment clauses and allocated on a "uniform volumetric basis to both sales and transportation classes." LDC's are, however, free to propose recovery vehicles for take-or-pay costs other than recovery of such costs through their uniform purchased gas adjustment clauses. *Re Costs Associated with Take-or-pay Charges* (Ill. Com. Comm'n 1988), 97 Pub. Utilities Rep. 4th 189, 200.

Petitioners Illinois Industrial Energy Consumers (IIEC) and State of Illinois Office of Public Counsel (OPC) appeal the ICC's July 20, 1988, and November 22, 1988, orders. Essentially, both the IIEC and the OPC assert neither the Federal preemption doctrine nor the filed-rate doctrine supports the ICC's decision it has no choice but to allow LDC's to recover the full amount of the take-or-pay costs which they must pay to pipeline companies. They assert, rather, the ICC could conduct a prudence review of the purchasing practices of Illinois LDC's as they affect take-or-pay costs and require Illinois LDC's to absorb portions of their take-or-pay costs if deemed appropriate. Also, the IIEC maintains because of the ICC's decision regarding the applicability of the preemption and filed-rate doctrines, it improperly struck testimony concerning the sharing of take-or-pay costs between LDC's and rate payers and factors relevant to a prudence review of the past natural gas purchasing practices of the LDC's as they relate to their take-or-pay costs. Furthermore, the OPC asserts the ICC's conclusion take-or-pay costs should normally be recovered through the mechanism of purchased gas adjustment clauses is contrary to the Public Utilities Act (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 1—101 *et seq.*), because take-or-pay charges do not represent amounts which the LDC's pay for natural gas.

The respondents—the ICC and several LDC's—maintain the ICC's decision is correct in all respects. The core of the respondents' argu-

ment is the ICC properly held the Federal preemption and the filed-rate doctrines preclude it from denying LDC's full recovery of their take-or-pay costs. They further assert (1) the LDC's are obligated to pay the take-or-pay charges which have been billed to them, (2) there was nothing which they could have done to avoid those charges immediately before they were assessed, and (3) there is nothing which they can presently do to avoid payment of those charges. They assert the ICC is thus precluded from considering the prudence of the gas purchases of the LDC's which resulted in their incurring take-or-pay obligations. They also assert the cost savings of LDC's, which resulted from their purchases of lower priced natural gas, but on the basis of which the take-or-pay charges were subsequently assessed, were passed on to the customers of the LDC's in the form of lower natural gas rates. Respondents assert, contrary to petitioners' contentions, the statements of FERC, as well as the actions of FERC with regard to recovery by pipeline companies of their take-or-pay costs, support the conclusion State regulatory agencies may not deny LDC's the right to recover all take-or-pay costs for which they are liable. Respondents maintain even if FERC's statements did support this conclusion, FERC has no power to define the preemptive effect of its regulations. Also, respondents argue the ICC properly concluded LDC's may recover take-or-pay costs through their uniform purchased gas adjustment clauses, since under long-standing ICC practice, charges for items which may not be related to the actual amount of gas purchased, such as minimum gas charges and demand charges, may nevertheless be recovered through uniform purchased gas adjustment clauses.

Respondents Peoples Gas, Light and Coke Company, North Shore Gas Company, and Central Illinois Public Service Company also argue the ICC's July 20, 1988, order was an appealable order. They contend since this order was not appealed in a timely manner, we may not now consider on review the question of whether the ICC is precluded by the Federal preemption and filed-rate doctrines from denying the LDC's full recovery of their take-or-pay costs. Furthermore, respondent Northern Illinois Gas Company (NI) argues the failure of petitioners to appeal an ICC order entered December 21, 1988, allowing it to recover its take-or-pay costs in its rates, precludes petitioners from obtaining review of the ICC's July 20, 1988, and November 22, 1988, orders insofar as they relate to NI.

■ We first consider whether the ICC's interlocutory order of July 20, 1988, insofar as it addressed the applicability of the Federal preemption and filed-rate doctrines, was an appealable order. The

Public Utilities Act provides in pertinent part:

"No appeal shall be allowed from any rule, regulation, order or decision of the Commission unless and until an application for a rehearing thereof shall first have been filed with and finally disposed of by the Commission ***." Ill. Rev. Stat. 1987, ch. 111⅔, par. 10—113.

"Within 30 days after the service of any order or decision of the Commission refusing an application for a rehearing of any rule, regulation, order or decision of the Commission, including any order granting or denying interim rate relief, or within 30 days after the service of any final order or decision of the Commission upon and after a rehearing of any rule, regulation, order or decision of the Commission, including any order granting or denying interim rate relief, any person or corporation affected by such rule, regulation, order or decision, may appeal to the appellate court of the judicial district in which the subject matter of the hearing is situated, or if the subject matter of the hearing is situated in more than one district, then of any one of such districts, for the purpose of having the reasonableness or lawfulness of the rule, regulation, order or decision inquired into and determined." (Ill. Rev. Stat. 1987, ch. 111⅔, par. 10—201.)

The statutory language relevant to this subject, as contained in the legislation which was in force prior to enactment of the Public Utilities Act (Ill. Rev. Stat. 1983, ch. 111⅔, pars. 71, 72), is substantially the same. Under the legislation in effect prior to enactment of the Public Utilities Act, interlocutory ICC orders were not deemed appealable. (*People v. Illinois Commerce Comm'n* (1983), 114 Ill. App. 3d 384, 448 N.E.2d 986 (order granting interim rate relief); *Candlewick Lake Utilities Co. v. Illinois Commerce Comm'n* (1978), 65 Ill. App. 3d 185, 382 N.E.2d 88 (order granting discovery request).) As noted by respondents Peoples Gas, Light, and Coke Company, North Shore Gas Company, and Central Illinois Public Service Company, the result in *People v. Illinois Commerce Comm'n* was, in effect, overturned by the enactment of legislation permitting appeal of ICC orders granting interim rate relief. (Ill. Rev. Stat. 1987, ch. 111⅔, pars. 10—113, 10—201.) However, this legislation obviously has no impact on the appealability of interlocutory ICC orders other than those granting interim rate relief.

As the court observed in *Candlewick Lake Utilities Co.*, allowing appeals from all interlocutory administrative agency orders would create interminable delays in administrative proceedings. For

this reason, and because there is no Illinois case law supporting the appealability of orders such as the ICC's July 20, 1988, order, we hold that order was not an appealable order. In view of this conclusion, there is obviously no basis for respondents' contention we may not consider the merits of the ICC's decision relating to the applicability of the Federal preemption and filed-rate doctrines.

■ Respondent NI argues since the ICC on December 21, 1988, approved a tariff allowing NI to collect take-or-pay costs in the rates charged its customers (ICC docket No. 88—105), and petitioners did not appeal that order, petitioners are precluded from obtaining review of the ICC's July 20, 1988, interlocutory order and November 22, 1988, final order insofar as they relate to NI. We cannot accept this argument. The order in ICC docket No. 88—105 permitting NI to collect take-or-pay costs from its customers merely gives effect to the ICC's July 20 and November 22, 1988, decisions. Absent these prior decisions, there would be no basis for the ICC's order in ICC docket No. 88—105. Because the order in ICC docket No. 88—105 merely enforced the ICC's July 20, 1988, and November 22, 1988, orders, we hold it was not necessary for petitioners to also appeal the order in ICC docket No. 88—105 in order to obtain review of the former two orders.

■■ ■ The principles applicable to review of ICC orders are well established. The ICC's findings and conclusions as to questions of fact must be held *prima facie* true and correct, and the ICC's decisions shall be held *prima facie* reasonable. (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 10—201(d).) Ordinarily, the ICC's decisions are entitled to great weight and deference. However, reviewing courts are not bound by the ICC's decisions as to legal issues, and the ICC's decisions as to those issues are not entitled to a presumption of *prima facie* correctness. *Citizens Utilities Co. v. Illinois Commerce Comm'n* (1987), 153 Ill. App. 3d 28, 504 N.E.2d 1367, *aff'd* (1988), 124 Ill. 2d 195, 529 N.E.2d 510.

■ Preemption of State laws and administrative regulations by Federal statutes or administrative regulations occurs under three circumstances: (1) the Federal statutory language specifically preempts State regulation of the subject matter covered by the statute or regulation; (2) Congress or a Federal administrative agency indicates an intention to occupy the entire field of regulation of a particular subject matter and to thereby preempt State regulation of the subject matter; or (3) compliance with both State and Federal laws or regulations covering the same subject matter is impossible or the State law or administrative regulation in question poses an obstacle to accom-

plishment of a purpose or goal of Congress or a Federal administrative agency. (See *Michigan Canners & Freezers Association, Inc. v. Agricultural Marketing & Bargaining Board* (1984), 467 U.S. 461, 81 L. Ed. 2d 399, 104 S. Ct. 2518; *Capital Cities Cable, Inc. v. Crisp* (1984), 467 U.S. 691, 81 L. Ed. 2d 580, 104 S. Ct. 2694; *Hillsborough County v. Automated Medical Laboratories, Inc.* (1985), 471 U.S. 707, 85 L. Ed. 2d 714, 105 S. Ct. 2371.) The filed-rate doctrine is an extension of the preemption doctrine. For our purposes here, it is designed to ensure the integrity of regulation by FERC of interstate sales of electricity and natural gas at wholesale. Under this doctrine, a State regulatory agency generally may not exercise its authority over retail sales of power or natural gas to prevent an entity which buys power or gas at wholesale and sells it at retail from recovering its costs of paying FERC-approved rates for the power or gas. However, exceptions to this doctrine exist where, for instance, a utility purchases an excessive amount of high-cost power at FERC-approved rates which it could have purchased at a lower cost. In this situation, a State regulatory agency may prevent a utility from recovering a portion of the cost of high-priced power or natural gas, even though it was purchased at FERC-approved rates. (See *Nantahala*, 476 U.S. 953, 90 L. Ed. 2d 943, 106 S. Ct. 2349.) In *Mississippi Power & Light Co.*, the Court succinctly summarized the true import of the filed-rate doctrine:

> "The *reasonableness of rates and* [interstate power allocation] *agreements regulated by FERC* may not be collaterally attacked in state or federal courts. The only appropriate forum for such a challenge is before [FERC] or a court reviewing [FERC's] order." (Emphasis added.) *Mississippi Power & Light Co.*, 487 U.S. at 375, 101 L. Ed. 2d at 340, 108 S. Ct. at 2440.

The Natural Gas Act provides in part:

> "The provisions of this chapter shall not apply to any person engaged in *** the transportation in interstate commerce or the sale in interstate commerce for resale, of natural gas received by such person from another person within or at the boundary of a State if all the natural gas so received is ultimately consumed within such State *** provided that the rates and service of such person *** be subject to regulation by a State commission. The matters exempted from the provisions of this chapter by this subsection are declared to be matters primarily of local concern and subject to regulation by the several States." 15 U.S.C. §717(c) (1982).

On the basis of the above statutory language, it is appar-

ent the congressional intent in enacting the Natural Gas Act was to generally leave to State regulatory agencies the regulation of the rates of LDC's. Where Congress does not manifest a clear intention to preempt a field of regulation, resort must be had to the applicable Federal administrative agency regulations in order to determine whether State regulation of the matter in question is preempted. (*Hillsborough County*, 471 U.S. 707, 85 L. Ed. 2d 714, 105 S. Ct. 2371.) In Order 500, FERC stated:

> "As previously noted, the proposed policy statement does not attempt to prescribe the methods by which approved pipeline take-or-pay costs are to be allocated at the state level. However, it is the Commission's view that there should be an *equitable sharing* of take-or-pay costs among all segments of the industry. The issue therefore is whether there exists any basis to expect that state agencies will be able to effect a *sharing* of pipeline take-or-pay costs as *between* LDCs and their customers.
>
> The Commission does not believe that *Nantahala* precludes state regulators from designing LDC rates, or, in appropriate circumstances, from reviewing the prudence of LDCs' purchasing decisions insofar as they affect take-or-pay costs. It must be recognized that a fixed charge for take-or-pay costs is based on the need for assured recovery in light of a pipeline's agreement to absorb a comparable share of its take-or-pay costs. It is not based on the fact that the costs included in the charge are fixed costs. As the Commission has noted, take-or-pay settlement costs are actually related to the acquisition of gas supply and are considered as production-related. Therefore the Commission believes state regulators could consider reclassifying take-or-pay costs billed as a fixed charge as commodity costs and incorporating such costs into LDC sales or transportation rates, or both, thereby spreading such costs to the maximum possible extent as well as subjecting them to market forces. Alternatively, state agencies may wish to consider the option of not reclassifying fixed take-or-pay charges and instead allocating such charges to the LDC's customers based on their cumulative purchase deficiencies." (Emphasis added.) Order 500, 52 Fed. Reg. at 30, 344-45, 89 Pub. Utilities Rep. 4th at 331.

▬ Normally, one can expect an administrative agency will make its intentions clear if it intends for its regulations to have a preemptive effect. (*California Coastal Comm'n v. Granite Rock Co.* (1987), 480 U.S. 572, 94 L. Ed. 2d 577, 107 S. Ct. 1419; *Hillsborough*

*County*, 471 U.S. 707, 85 L. Ed. 2d 714, 105 S. Ct. 2371.) In this case, FERC, in promulgating its regulations regarding recovery of take-or-pay costs, manifested an intention *not* to preempt State regulatory agency decisions which might require LDC's to share with rate payers (*i.e.*, absorb) a portion of their take-or-pay costs. FERC's interpretation of its authority under the relevant legislation is entitled to deference where, as here, "it does not violate [the] plain meaning [of applicable legislation] and is a reasonable interpretation of silence or ambiguity." *Mississippi Power & Light Co.*, 487 U.S. at 380, 101 L. Ed. 2d at 344, 108 S. Ct. at 2443 (Scalia, J., concurring).

 There is thus no basis for concluding State administrative agencies are precluded by either Federal legislation or administrative rules from requiring LDC's to absorb some of their take-or-pay costs under appropriate circumstances. Moreover, there is no basis for holding (1) compliance with both FERC regulations governing take-or-pay costs and a State administrative agency regulation or decision requiring LDC's to absorb some of their take-or-pay costs would be impossible, or (2) the ICC preventing full recovery of LDC take-or-pay costs would frustrate a purpose or goal of Congress or FERC.

In support of their position State regulatory agencies are prohibited by the preemption and filed-rate doctrines from denying LDC's full recovery of their take-or-pay costs, respondents rely mainly on *Mississippi Power* and *Nantahala*. Neither of these decisions supports that conclusion.

*Mississippi Power* involved a nuclear power plant owned entirely by subsidiaries of a parent corporation. FERC allocated the costs of the plant to each of the subsidiary companies in proportion to its relative demand for power. The United States Supreme Court held a State regulatory commission could not review the prudence of the investment of one of the subsidiary operating companies in the plant and thereby possibly deny it the right to recover its FERC-allocated costs of the plant.

Likewise, in *Nantahala*, a utility was allocated a certain percentage of low-cost Tennessee Valley Authority power. A State regulatory agency issued an order which would have required the utility to calculate its rates as if FERC had allocated it a larger percentage of the low-cost power than FERC actually did. The United States Supreme Court reversed a State court decision which affirmed the regulatory agency's decision, on the basis States may not alter FERC-ordered allocations of power by substituting their own judgments as to what would be a fair and reasonable allocation for those of FERC.

In both of the above cases, there was a readily apparent intention

on the part of FERC to preempt the entire field of allocation of power produced by interstate electricity pools. The Supreme Court merely gave effect to this intention. In the present case, by contrast, FERC manifested an intention not to preempt action by State regulatory agencies requiring LDC's to absorb portions of their take-or-pay costs. Courts may not accord a preemptive effect to Federal statutes or administrative agency rules or orders when there is no stated intention whatsoever on the part of either Congress or a Federal administrative agency, the statutes, rules, or orders in question are to have a preemptive effect.

Respondents also rely to a great extent on the following language contained in FERC's order in *Re United Gas Pipe Line Co.* (1988), 45 F.E.R.C. par. 61,335, at 62,054, 99 Pub. Utilities Rep. 4th 343, 344-45:

> "LDCs' rates are regulated exclusively by state and local rate setting agencies. However, those agencies are preempted from questioning or altering the wholesale rates set by this Commission. Instead, they must allow their regulated LDCs to recover in retail rates the costs incurred as a result of paying the wholesale rates determined by this Commission. Consequently, state and local rate setting agencies take a special role in this Commission's proceedings. That role is recognized in Commission regulations that grant automatic party status to state commissions that file timely notices of intervention. By participating in a pipeline's take-or-pay recovery proceeding under Order No. 500 on the issue of prudence, state and local rate setting agencies are pursuing their only opportunity to examine *the reasonableness of the take-or-pay costs of their regulated companies' supplier* and thereby have some input into the determination by this Commission of the amount of that supplier's take-or-pay costs to be recovered through fixed charges. Granting the relief sought would turn those agencies' participation into no more than an empty exercise." (Emphasis added.)

An examination of the full text of this decision reveals the above passage was quoted out of context by respondents. As is demonstrated by the following language, this decision dealt solely with challenges by State administrative agencies to the prudence of pipeline (as opposed to LDC) purchases of natural gas from producers and other suppliers:

> "Philadelphia Electric and the Joint Advocates assert that the Commission's conclusions regarding the role of state or local rate setting agencies have the effect of denying standing to LDCs whenever their rate setting agencies intervene in proceedings involving determinations of take-or-pay costs under

Order No. 500. They argue that despite a decision by an LDC to accept a pipeline's take-or-pay recovery proposal, a decision by its regulatory body to challenge the pipeline's prudence can expose it to a potentially much larger financial obligation. They request that the Commission order that the results of state or local rate setting agencies' challenges to prudence not be binding on the agencies' regulated companies. The relief sought will not be granted." (*Re United Gas Pipe Line Co.*, 45 F.E.R.C. at 62,054, 99 Pub. Utilities Rep. 4th at 344.)

In footnote six of this decision, FERC reaffirmed its position that State regulatory agencies may prevent LDC's from recovering portions of their take-or-pay costs under certain circumstances:

"*See Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 74 PUR4th 464, 90 L. Ed. 2d 943, 106 S. Ct. 2349 (1986), in which the Court held that a State may not conclude in setting retail rates that FERC-approved wholesale rates are unreasonable. *See*, also, *Kentucky West Virginia Gas Co. v. Pennsylvania Pub. Utility Commission*, 92 PUR4th 542, 837 F.2d 600 (3rd. Cir. 1988). However, as the Commission stated in Order No. 500, it 'does not believe that *Nantahala* precludes state regulators from designing LDC rates, or, in appropriate circumstances, from reviewing the prudence of LDCs' purchasing decisions insofar as they affect take-or-pay costs *** The development of cost allocation procedures and rates for the LDCs are matters to be determined by state regulatory authorities.' Order No. 500 at 30,790." *Re United Gas Pipe Line Co.*, 45 F.E.R.C. at 62,054 n.6, 99 Pub. Utilities Rep. 4th at 346 n.6.

We are not persuaded, by the fact FERC has in most instances allowed pipelines to recover their full take-or-pay costs from their customers, that FERC intended all LDC's be permitted to recover the full amounts of their take-or-pay costs from their rate payers. Different factors obviously affect determination of the questions of whether pipelines, on the one hand, and LDC's, on the other hand, should be permitted full recovery of their take-or-pay costs. Furthermore, the fact LDC's have no present choice but to pay the take-or-pay costs billed to them does not necessarily mean they should be permitted full recovery of these costs. Past actions of the LDC's influenced the amount of these costs. For example, an LDC's choice of a natural gas supplier which subsequently incurred high take-or-pay charges obviously caused that LDC to incur higher take-or-pay costs than it would have incurred had it chosen a supplier which incurred lower take-or-pay charges. Whether an LDC that chooses a supplier which incurred

take-or-pay charges should be denied full recovery of its take-or-pay costs, because of lack of prudence at the time that choice was made, is a question which we do not here decide.

 ■ Finally, the fact the ICC conducts annual reviews of fuel costs to determine the prudency of utilities' fuel purchases pursuant to section 9—220 of the Act (Ill. Rev. Stat. 1987, ch. 111⅔, par. 9—220) does not preclude remandment of this cause to the ICC for further proceedings. The ICC premised its decision solely on the applicability of the Federal preemption doctrine; it did not address the question of the possible redundancy of further prudency hearings in view of prior section 9—220 prudency hearings. It would be inappropriate for us to address this question without the ICC having had a prior opportunity to consider it.

 ■ The scope of our decision today is very limited. We merely hold the ICC is *not precluded* by the Federal preemption and filed-rate doctrines from requiring LDC's to absorb a portion of their take-or-pay costs. We do not consider whether the LDC's should, in fact, absorb any portion of those costs. That is for the ICC to decide in subsequent proceedings. At the proceedings following remandment of this cause, the ICC is to admit evidence pertaining to (a) the sharing of the take-or-pay costs of LDC's between the LDC's and rate payers and (b) the factors relevant to the prudence of the past purchasing practices of the LDC's as they relate to take-or-pay costs. We recognize our decision may cause the ICC to change some of its holdings as to issues other than those which we here address.

The portions of the ICC's July 20, 1988, and November 22, 1988, orders dealing with the applicability of the Federal preemption and filed-rate doctrines, and the exclusion of evidence relevant to the sharing of take-or-pay costs and the prudence of the LDC's past purchasing practices, are reversed. This cause is remanded to the Illinois Commerce Commission for further proceedings in conformity with the views expressed herein.

Reversed and remanded.

GREEN, J., concurs.

JUSTICE LUND, dissenting:

I dissent and would concur with the ICC's finding that it was preempted from considering whether local distribution companies (LDC's) should be allowed to recover from their customers all or part of take-or-pay costs allocated to the LDC's by the rules of the Federal En-

ergy Regulatory Commission (FERC).

First, it should be understood that, pursuant to section 9—220 of the Public Utilities Act (Act) (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 9—220), utilities are required to establish the prudence of purchases on an annual basis. Second, the automatic adjustment clause allowing costs of natural gas to be passed on through to the customers, as an alternative to general rate case filings, has been approved by the Illinois Supreme Court. (See *City of Chicago v. Illinois Commerce Comm'n* (1958), 13 Ill. 2d 607, 614, 150 N.E.2d 776, 780.) Third, as pointed out in the majority opinion, take-or-pay terms in contracts became standard during the natural gas shortage in the 1970's. Fourth, when gas became plentiful, local users and LDC's made direct purchases (often using the pipelines of the previous wholesale supplier) at a lower cost than interstate pipelines could charge (at least partly because of their existing take-or-pay contracts).

The FERC stepped in with Order 500, allowing the interstate pipelines to pass on losses incurred because of the take-or-pay contracts. The majority opinion adequately describes Order 500 and its effect.

Order 500, in effect, upholds the take-or-pay clauses and allows for, at least, part of the cost incurred by the clauses to be recovered by adding to the wholesale cost of power. The contracts entered into by the LDC's, which included the take-or-pay clauses, were previously subject to scrutiny under the annual review provisions of section 9—220 of the Act. The prudence review now sought would, in reality, be considering the propriety of the provisions of take-or-pay clauses included in the contracts.

The FERC made the following statement in *Re United Gas Pipe Line Co.* (1988), 45 F.E.R.C. par. 61,335, at 62,054, 99 Pub. Utilities Rep. 4th 343, 344-45:

> "LDCs' rates are regulated exclusively by state and local rate setting agencies. However, those agencies are preempted from questioning or altering the wholesale rates set by this Commission. Instead, they must allow their regulated LDCs to recover in retail rates the costs incurred as a result of paying the wholesale rates determined by this Commission. Consequently, state and local rate setting agencies take a special role in this Commission's proceedings. That role is recognized in Commission regulations that grant automatic party status to state commissions that file timely notices of intervention. By participating in a pipeline's take-or-pay recovery proceeding under Order No. 500 on the issue of prudence, state and local rate setting

agencies are pursuing their only opportunity to examine the reasonableness of the take-or-pay costs of their regulated companies' supplier and thereby have some input into the determination by this Commission of the amount of that supplier's take-or-pay costs to be recovered through fixed charges."

It is my opinion that both *Nantahala* and *Mississippi Power* support the ICC's conclusion of Federal preemption.

In *Nantahala,* the North Carolina Supreme Court was reversed when it held the percentage of entitlement power allotted to a North Carolina utility by the FERC could be increased by the State Utilities Commission. Not only was the FERC's exclusive jurisdiction over interstate power recognized (*Nantahala,* 476 U.S. at 956, 90 L. Ed. 2d at 948, 106 S. Ct. at 2352), but the decision holds the exclusive jurisdiction extended to the allocation of entitlement power. At issue is the "matter of enforcing the Supremacy Clause." *Nantahala,* 476 U.S. at 963, 90 L. Ed. 2d at 952, 106 S. Ct. at 2355.

Justice O'Connor wrote, as follows:

"In *Chicago & North Western Transp. Co. v. Kalo Brick,* 450 U.S. 311, 67 L. Ed. 2d 258, 101 S. Ct. 1124 (1981), the Court similarly noted that the filed rate doctrine as applied to the actions of the Interstate Commerce Commission assisted in the enforcement of the supremacy of federal law:

'The common rationale of these cases is easily stated: "[T]here can be no divided authority over interstate commerce, and . . . the acts of Congress on that subject are supreme and exclusive." *Missouri Pacific R. Co. v. Stroud,* 267 U.S. 404, 408 [,69 L. Ed. 683, 685, 45 S. Ct. 243, 245] (1925). Consequently, state efforts to regulate commerce must fall when they conflict with or interfere with federal authority over the same activity.' *Id.,* at 318-19, 67 L. Ed. 2d 258, 101 S. Ct. 1124."

(*Nantahala,* 476 U.S. at 964, 90 L. Ed. 2d at 953, 106 S. Ct. at 2355-56.)

She went on to state:

"In both contexts, these courts have concluded that a state utility commission setting retail prices must allow, as reasonable operating expenses, costs incurred as a result of paying a FERC-determined wholesale price." *Nantahala,* 476 U.S. at 965, 90 L. Ed. 2d at 953, 106 S. Ct. at 2356.

In *Mississippi Power,* the FERC had allocated costs of a nuclear power plant among four different operating companies owned by the holding company, which also constructed the nuclear plant. The State

of Mississippi attempted to challenge the allocation assigned to Mississippi Power and Light Company, an intrastate utility. The Supreme Court, citing *Nantahala*, held that the FERC Federal action preempted State interference. Justice Stevens made the following statement:

"In this case as in Nantahala we hold 'that a state utility commission setting retail prices must allow, as reasonable operating expenses, costs incurred as a result of paying a FERC-determined wholesale price ... . Once FERC sets such a rate, a State may not conclude in setting retail rates that the FERC-approved *wholesale rates are unreasonable*. A state must rather give effect to Congress' desire to give FERC plenary authority over interstate wholesale rates, and to ensure that the States do not interfere with this authority.' *Nantahala*, 476 U.S. at 965, 966, 90 L. Ed. 2d 943, 106 S. Ct. 2349." (Emphasis added.) *Mississippi Power*, 487 U.S. at 339, 101 L. Ed. 2d at 339, 108 S. Ct. at 2440.

In our present case, the FERC has determined that take-or-pay power costs, incurred by interstate power suppliers, shall be passed on to LDC's. The take-or-pay costs have, thus, been determined to be part of the wholesale cost of power by the FERC and must be allowed by the State utility commissioners as reasonable operating expenses when setting retail prices. I conclude that the ICC does not have the authority to consider the prudence of LDC's prior commitments to take-or-pay costs.